UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES OF AMERICA,   :
             :
   - v.-      :  S21 12 Cr. 171 (DAB)
             :
MICHAEL DANILOVICH,    :
             :
    Defendant.    :
------------------------------------------------------------x

## THE GOVERNMENT'S PROPOSED REQUESTS TO CHARGE

PREET BHARARA
United States Attorney for the
Southern District of New York
Attorney for the United States of America

Daniel S. Noble
Joshua A. Naftalis
Jaimie L. Nawaday
Assistant United States Attorneys
  - Of Counsel –

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
UNITED STATES OF AMERICA,                          :
                                                   :
               - v.–                               :        S21 12 Cr. 171 (DAB)
                                                   :
MICHAEL DANILOVICH,                                :
                                                   :
               Defendant.                          :
-------------------------------------------------------------x

## <u>GOVERNMENT'S PROPOSED REQUESTS TO CHARGE</u>

       Pursuant to Rule 30 of the Federal Rules of Criminal Procedure, the Government

respectfully requests the Court to include the following instructions in its charge to the jury.

## TABLE OF CONTENTS

Page

1.    General Requests ..................................................................................................1

2.    The Indictment ....................................................................................................2

3.    Summary of Indictment ......................................................................................3

4.    Count One:  RICO Conspiracy ..........................................................................6

5.    Count One:  The Law of Conspiracy ................................................................7

6.    Count One:  Elements of Conspiracy ................................................................8

7.    Count One:  Extent of Participation ..................................................................12

8.    Count One:  The Elements of RICO Conspiracy ..............................................14

9.    Count One:  First Element – The Enterprise.....................................................16

10.   Count One:  Second Element – Effect on Interstate Commerce........................18

11.   Count One:  Third Element – Association with the Enterprise .........................19

12.   Count One:  Fourth Element – Membership in the Conspiracy.........................20

13.   Count One:  Fourth Element – The Pattern of Racketeering Activity...............22

14.   Count One:  Fourth Element – Racketeering Activity.......................................24

15.   Count One:  Predicate Offense #1:  Mail Fraud ...............................................25

16.   Count One:  Predicate Offense #2:  Wire Fraud ...............................................32

17.   Count One:  Predicate Offense #3:  Money Laundering....................................35

18.   Count One:  Predicate Offense #4:  Securities Fraud .......................................39

19.   Count One:  Predicate Offense #5:  Operation of
      Illegal Gambling Business (Federal Law) .........................................................43

20.   Count One:  Predicate Offense #6:  Operation of
      Illegal Gambling Business (New York State).....................................................48

21.    Count Two:  Conspiracy to Commit Securities Fraud (Lyons Ward Scheme)..................50

22.    Count Three:  Securities Fraud (Lyons Ward Scheme)....................................................51

23.    Count Four:  Conspiracy to Commit Mail Fraud and
       Wire Fraud (Lyons Ward Scheme) ................................................................................52

24.    Count Five:  Mail Fraud (Lyons Ward Scheme) ............................................................53

25.    Count Six:  Wire Fraud (Lyons Ward Scheme)..............................................................54

26.    Count Seven:  Conspiracy to Commit Securities Fraud (Baron & Caplan Scheme).........55

27.    Count Eight:  Conspiracy to Mail Fraud and Wire Fraud (Baron & Caplan Scheme) ......56

28.    Count Ten:  Health Care Fraud (No-Fault Scheme) .......................................................57

29.    Count Nine:  Health Care Fraud, Mail Fraud, and
       Wire Fraud Conspiracy (No-Fault Scheme) ..................................................................59

30.    Count Eleven:   Mail Fraud (No-Fault Scheme) ............................................................60

31.    Count Twelve:  Wire Fraud (No-Fault Scheme)............................................................61

32.    Count Thirteen:  Money Laundering Conspiracy (No-Fault Scheme) ............................62

33.    Counts Fourteen, Fifteen, and Sixteen: Money Laundering
       Substantive Counts (No-Fault Scheme) ........................................................................64

34.    Conscious Avoidance..................................................................................................65

35.    Aiding and Abetting....................................................................................................68

36.    Venue  ......................................................................................................................70

37.    Time of Offense ........................................................................................................72

38.    Immunity of Government Witnesses .............................................................................73

39.    Cooperating Witness Testimony...................................................................................74

40.    Defendant's Right Not to Testify.................................................................................77

41.    Law Enforcement and Government Employee Witnesses................................................78

42.  Use of Recordings........................................................................................79

43.  Transcripts.................................................................................................80

44.  Use of Table and Charts.............................................................................82

45.  Persons Not on Trial..................................................................................81

46.  Preparation of Witnesses...........................................................................83

47.  Particular Investigative Techniques Not Require ......................................84

48.  Uncalled Witnesses....................................................................................86

49.  Stipulations ...............................................................................................87

50.  Sympathy: Oath as Jurors .........................................................................88

51.  Punishment Not to be Considered by the Jury...........................................89

52.  Use of Evidence From Search.....................................................................90

53.  Similar Act Evidence .................................................................................91

54.  Prior Proceedings ......................................................................................92

55.  Conclusion .................................................................................................93

# REQUEST NO. 1

## General Requests

The parties respectfully request that the Court give its usual instructions to the jury on the following matters:

a.    Function of Court and Jury.

b.    Indictment Not Evidence.

c.    Statements of Court and Counsel Not Evidence.

d.    Burden Of Proof and Presumption of Innocence.

e.    Reasonable Doubt.

f.    Jury's Recollection Controls.

g.    Inferences.

h.    Government Treated Like Any Other Party.

i.    Definitions, Explanations, and Example of Direct and
      Circumstantial Evidence.

j.    Credibility of Witnesses.

k.    Right to See Exhibits and Have Testimony Read During Deliberations.

l.    Sympathy:  Oath of Jurors.

m.    Punishment is Not to be Considered by the Jury.

n.    Verdict Of Guilt Or Innocence Must Be Unanimous.

o.    Interest in Outcome.

**REQUEST NO. 2**

**The Indictment**

The defendant MICHAEL DANILOVICH has been formally charged in what is called an Indictment.  An Indictment is simply an accusation.  It is no more than the means by which a criminal case is started.  It is not evidence.  It is not proof of the defendant's guilt.  It creates no presumption, and it permits no inference, that the defendant is guilty.  You are to give no weight to the fact that an Indictment has been returned against the defendant.

Before you begin your deliberations, you will be provided with a copy of the Indictment.  I will not read the entire Indictment to you at this time.  Rather, I will first summarize the offenses charged in the Indictment and then explain in detail the elements of the charged offenses.

**REQUEST NO. 3**

**Summary of Indictment**

The Indictment contains 16 counts or "charges."  Specifically, Count One of the Indictment charges that, from at least in or about 2007, up through and including on or about 2012, MICHAEL DANILOVICH conspired or agreed with others to participate in the affairs of a racketeering enterprise through a "pattern of racketeering activity."  The alleged racketeering enterprise was an organization that engaged in various crimes, including securities fraud, a scheme to defraud automobile insurance companies, money laundering, and operating illegal gambling businesses in violation of federal law and New York State law.  I will hereafter refer to Count One as the "RICO conspiracy" count after the name of the statute, whose full name is the Racketeer Influenced Corrupt Organizations Act, but is more commonly known as RICO.

Counts Two through Six relate to the Lyons Ward securities fraud scheme.

Count Two charges that from at least in or about 2007 up to and including in or about February 2009, MICHAEL DANILOVICH participated in a conspiracy to commit securities fraud.  That is, he agreed with others to commit securities fraud.

Count Three charges MICHAEL DANILOVICH with a substantive count of securities fraud from at least in or about 2007 up to and including in or about February 2009.  Later on, I will explain to you the differences between a conspiracy count and a substantive count.  For now, just keep in mind that a conspiracy count is different from a substantive count.

Count Four charges that from at least in or about 2007 up to and including in or about February 2009, MICHAEL DANILOVICH participated in a conspiracy to commit mail

3

fraud and wire fraud.  That is, he agreed with others to use the mails and wires to commit a fraud.

Count Five charges MICHAEL DANILOVICH with a substantive count of mail fraud from at least in or about 2007 up to and including in or about February 2009.

Count Six charges MICHAEL DANILOVICH with a substantive count of wire fraud from at least in or about 2007 up to and including in or about February 2009.

Counts Seven and Eight relate to the Baron & Caplan securities fraud scheme.

Count Seven charges that from at least in or about 2011 up to and including in or about Summer 2012, MICHAEL DANILOVICH participated in a conspiracy to commit securities fraud.

Count Eight charges that from at least in or about 2011 up to and including in or about Summer 2012, MICHAEL DANILOVICH participated in a conspiracy to commit mail fraud and wire fraud.

Counts Nine through Twelve relate to the no-fault insurance fraud scheme.

Count Nine charges that, from at least in or about 2007, up through and including in or about 2012, MICHAEL DANILOVICH conspired to commit health care fraud, mail fraud, and wire.

Count Ten charges MICHAEL DANILOVICH with a substantive count of health care fraud from at least in or about 2007 up to and including in or about 2012.

Count Eleven charges that MICHAEL DANILOVICH conspired to commit mail fraud from at least in or about 2007 up to and including in or about 2012.

Count Twelve charges MICHAEL DANILOVICH with a substantive count of wire fraud from at least in or about 2007 up to and including in or about 2012.

Count Thirteen charges MICHAEL DANILOVICH with participating in a money laundering conspiracy from approximately 2007 through 2012.  I will further explain the concept of money laundering to you later.  In essence, the Government has alleged that this defendant agreed with others to conduct financial transactions involving proceeds from health care fraud, mail fraud, and wire fraud, in violation of various federal money laundering statutes.

Counts Fourteen through Sixteen charge MICHAEL DANILOVICH with committing substantive counts of money laundering from approximately 2007 through 2012.

That is a summary of all 16 counts in the Indictment.  You must consider each count separately, and you must return a separate verdict of guilty or not guilty for each count.  Whether you find the defendant guilty or not guilty as to one count should not affect your verdict as to any other count.

Before I describe the specific elements of the alleged offenses, I should draw your attention to the fact that it does not matter if the Indictment charges that a specific act occurred on or about a certain date, and the evidence indicates that, in fact, it was on another date.  The law only requires a substantial similarity between the dates alleged in the Indictment and the dates established by the evidence.

Adapted from the charge given in United States v. Bello, 91 Cr. 571 (MBM), aff'd mem., 990 F.2d 622 (2d Cir. 1993), and from Hon. Leonard B. Sand, et al., Modern Federal Jury Instructions, Instr. 3-6.

## REQUEST NO. 4

### Count One:  RICO Conspiracy

### The Indictment and the Statute

Count One of the Indictment charges MICHAEL DANILOVICH with conspiring with others known and unknown to violate Section 1962(c) of Title 18 of the United States Code of the federal racketeering laws, which are commonly referred to as "RICO."  Let me stop here and note that the words "racketeer" and "racketeering" have certain implications in our society. However, use of that term in this statute and this courtroom should not be regarded as having anything to do with your determination of whether the guilt of the defendant has been proven. The term is only a term used by Congress to describe the statute.

Sand, et al., Model Federal Jury Instructions, 52.02.

**REQUEST NO. 5**

**Count One:  The Law of Conspiracy**

Title 18, United States Code, Section 1962(c), makes it a federal crime for anyone who is associated with any "enterprise" engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a "pattern of racketeering activity."

In Count One, the defendant is charged with knowingly and willfully <u>conspiring</u> with others to violate the RICO statute.

Let me first give you some general instructions on the concept of a conspiracy. Please note that these general instructions will also apply to the conspiracies alleged in Counts Two, Four, Seven, Eight, Nine, and Thirteen.

A conspiracy is a kind of criminal partnership.   It is an agreement of two or more persons to join together to accomplish some unlawful purpose.  The crime of conspiracy — or agreement — to violate a federal law is an independent offense.  It is separate and distinct from the actual violation of any specific federal laws, which the law refers to as "substantive crimes." Indeed, you may find the defendant guilty of the crime of conspiracy even if you find that the substantive crimes which were the objects or goals of the charged conspiracy were never actually committed.  Congress has deemed it appropriate to make conspiracy, standing alone, a separate crime, even if the conspiracy is not successful.

Adapted from the charge give in <u>United States</u> v. <u>Zemlyansky</u>, 12 Cr. 171 (JPO), and <u>United States</u> v. <u>Edmund Boyle</u>, 08 Cr. 523 (CM).

7

## REQUEST NO. 6

### Count One:  Elements of Conspiracy

To sustain its burden of proof with respect to Count One of the Indictment, the Government must prove beyond a reasonable doubt the following two elements:

First: the existence of the conspiracy charged in Count One of the Indictment; that is, the existence of any agreement or understanding to commit the unlawful objects of the charged conspiracy.  The first element then is:  Did the conspiracy alleged in the Indictment exist?  Was there such a conspiracy?

Second, the Government must prove beyond a reasonable doubt that the defendant willfully and knowingly became a member of the conspiracy, with intent to further its illegal purposes — that is, with the intent to commit the objects of the charged conspiracy.

Now, let's separately discuss each of these elements.

### First Element — Existence of Conspiracy

To satisfy the first element of a conspiracy — namely, to show that the conspiracy existed — the Government is not required to show that two or more people sat around a table and entered into a solemn pact, orally or in writing, stating that they had formed a conspiracy to violate the law and spelling out all of the details.  Common sense tells you that when people, in fact, agree to enter into a criminal conspiracy, much is left to unexpressed understanding.  It is rare that a conspiracy can be proven by direct evidence of an explicit agreement.

In order to show that a conspiracy existed, the evidence must show that two or more people, in some way or manner, through any contrivance, explicitly or implicitly (that

8

is, spoken or unspoken), came to a mutual understanding to violate the law and to accomplish an unlawful plan. If you find beyond a reasonable doubt that two or more persons came to an understanding, express or implied, to violate the law and to accomplish an unlawful plan, then the Government will have sustained its burden of proof as to this element.

When people enter into a conspiracy to accomplish an unlawful end, they become agents and partners of one another in carrying out the conspiracy. In determining whether there has been an unlawful agreement as alleged, you may consider the acts and conduct of the alleged co-conspirators that were done to carry out the apparent criminal purpose. In addition, in determining whether such an agreement existed, you may consider direct as well as circumstantial evidence. The old adage, "Actions speak louder than words," applies here. Often, the only evidence that is available with respect to the existence of a conspiracy is that of disconnected acts and conduct on the part of the alleged individual co-conspirators. When taken together and considered as a whole, however, these acts and conduct may warrant the inference that a conspiracy existed as conclusively as would direct proof. On this question, you should refer back to my earlier instructions on direct and circumstantial evidence and inferences.

So, you must first determine whether the evidence proves beyond a reasonable doubt the existence of the conspiracy charged in Count One of the Indictment. It is sufficient to establish the existence of the conspiracy, as I've already said, if you find beyond a reasonable doubt, from proof of all the relevant facts and circumstances, that the minds of at least two alleged co-conspirators met to accomplish, by the means alleged, the object of the conspiracy.

The object of a conspiracy is the illegal purpose the co-conspirators agree or hope to achieve.  The conspiracy charged in Count One had the alleged object of conducting and participating in the affairs of the racketeering enterprise through a pattern of racketeering activity.  The racketeering enterprise alleged in the Indictment is a group of people who engaged in various crimes, including securities fraud, a scheme to defraud automobile insurance companies that provide health care benefits to accident victims, money laundering, and the operation of illegal gambling businesses.

### Second Element — Membership in the Conspiracy

The second element that the Government must prove beyond a reasonable doubt to establish the offense of conspiracy charged in Count One of the Indictment is that the defendant willfully and knowingly became a member of the conspiracy.

If you are satisfied that the conspiracy charged in the indictment existed, you must next ask yourselves:  Who were the members of that conspiracy?  In deciding whether a defendant was, in fact, a member of the conspiracy, you should consider whether the defendant willfully and voluntarily joined the conspiracy.  Did he participate in it with knowledge of its unlawful purpose and with the specific intention of furthering its objects?

### "Willfully" and "Knowingly"

The terms "willfully" and "knowingly" mean that you must be satisfied beyond a reasonable doubt that in joining the conspiracy, the defendant knew what he was doing and that he did it deliberately and voluntarily.

An act is done "knowingly" and "willfully" if it is done deliberately and purposely — that is, the defendant's actions must have been his conscious objective rather than a product of a mistake or accident, mere negligence, or some other innocent reason.

To satisfy its burden of proof that the defendant willfully and knowingly became a member of a conspiracy to accomplish an unlawful purpose, the Government must prove beyond a reasonable doubt that the defendant knew that he was a member of a conspiracy to accomplish that unlawful purpose, and that his action of joining such a conspiracy was not due to carelessness, negligence, or mistake.

Now, knowledge, of course, is a matter of inference from the proven facts. Science has not yet devised a manner of looking into anyone's mind and knowing what he is thinking. However, you do have before you the evidence of acts alleged to have taken place by or with the defendant or in his presence. A defendant's knowledge is a matter of inference from the facts proved. In that connection, I instruct you that to become a member of the conspiracy, the defendant need not have known the identities of each and every other member, nor need he have been apprised of all of their activities. Moreover, the defendant need not have been fully informed as to all of the details, or the scope, of the conspiracy in order to justify an inference of knowledge on his part.

> Adapted from the charges given in United States v. Zemlyansky, 12 Cr. 171 (JPO), United States v. Ilya Boruch, 08 Cr. 820 (GBD), and United States v. Edmund Boyle, 08 Cr. 523 (CM), and from Sand et al., Modern Federal Jury Instructions, Instr. 19-4; see also United States v. Rea, 958 F.2d 1206, 1214 (2d Cir. 1992) ("In order to prove conspiracy, the government need not present evidence of an explicit agreement; proof of a tacit understanding will suffice. The coconspirators need not have agreed on the details of the conspiracy, so long as they have agreed on the essential nature of the plan, and their goals need not be congruent, so long as they are not at cross-purposes.") (citations omitted).

11

**REQUEST NO. 7**

**Count One:  Extent of Participation**

The extent of the defendant's participation in the conspiracy charged in Count One has no bearing on the issue of the defendant's guilt.  He need not have joined the conspiracy at the outset.  He may have joined it at any time in its progress, and he may still be held responsible for all that was done before he joined and all that was done during the conspiracy's existence while he was a member, as long as you find that he joined the conspiracy with knowledge as to its general scope and purpose.  Indeed, each member of a conspiracy may perform separate and distinct acts and may perform them at different times.  Some conspirators play major roles, while others play minor parts in the scheme.  An equal role is not what the law requires.  In fact, even a single act may be sufficient to draw the defendant within the ambit of the conspiracy.

I want to caution you, however, that the defendant's mere presence at the scene of the alleged crime does not, by itself, make him a member of the conspiracy.  Similarly, a person may know, assemble with, or be friendly with, one or more members of a conspiracy, without being a conspirator himself.  Mere similarity of conduct or the fact that the defendant may have discussed common aims and interests does not necessarily establish proof of the existence of a conspiracy.  I also want to caution you that mere knowledge or acquiescence, without participation, in the unlawful plan is not sufficient.

Moreover, the fact that the acts of the defendant, without knowledge, merely happen to further the purposes or objectives of the conspiracy, does not make the defendant a member.  More is required under the law.  What is necessary is that the defendant must have

12

participated with knowledge of at least some of the purposes or objects of the conspiracy and with the intention of aiding in the accomplishment of those unlawful ends.

When people enter into a conspiracy to accomplish an unlawful end, they become agents or partners of one another in carrying out the conspiracy.  In determining the factual issues before you, you may take into account any acts or statements made by the defendant's co-conspirators, even though such acts or statements were not made in the presence of the defendant or were made without his knowledge.

Once a conspiracy is formed, it is presumed to continue until either its objective is accomplished or there is some affirmative act of termination by the members.  So too, once a person is found to be a member of a conspiracy, he is presumed to continue as a member in the conspiracy until the conspiracy is terminated, unless it is shown by some affirmative proof that the person withdrew and disassociated himself from the conspiracy.

In sum, the defendant, with an understanding of the unlawful character of the conspiracy, must have intentionally engaged, advised, or assisted in it for the purpose of furthering the illegal undertaking.  He thereby becomes a knowing and willing participant in the unlawful agreement — that is to say, a conspirator.

> Adapted from the charges given in United States v. Zemlyansky, 12 Cr. 171 (JPO); United States v. Edmund Boyle, 08 Cr. 523 (CM); United States v. Tone Grant, 05 Cr. 1192 (NRB); United States v. Angelo Nicosia, 07 Cr. 907 (SAS); United States v. Xiang Chen, 02 Cr. 300 (LAK).

**REQUEST NO. 8**

**Count One:  The Elements of RICO Conspiracy**

Having instructed you generally on the law of conspiracy, I will now provide you with additional instructions specific to a violation of Section 1962(c), the section of the RICO statute whose violation is alleged to have been the object of the racketeering conspiracy charged in Count One of the Indictment.

In order to find that the defendant has conspired to violate Section 1962(c), as charged in Count One of the Indictment, the Government must prove beyond a reasonable doubt each of the following elements:

First, that the enterprise would be established as alleged in the Indictment;

Second, that the enterprise would be engaged in or its activities would affect interstate or foreign commerce;

Third, that the defendant would be employed by or associated with the enterprise; and

Fourth, that the defendant knowingly and willfully agreed to conduct or participate directly or indirectly in the conduct of the affairs of the charged enterprise through a pattern of racketeering activity.

To convict the defendant on the RICO conspiracy offense charged in Count One, the Government is not required to prove that the alleged enterprise was actually established, that the defendant was actually employed by or associated with the enterprise, or that the enterprise actually engaged in or its activities actually affected interstate or foreign commerce.  Rather, because the agreement to commit a RICO offense is the essence of a RICO conspiracy offense,

14

the Government need only prove that if the conspiracy offense were completed as contemplated, the enterprise would be established, that the defendant would be employed by or associated with the enterprise, and that the enterprise would be engaged in or its activities would affect interstate or foreign commerce.

> Adapted from the charge given in United States v. Zemlyansky, 12 Cr. 171 (JPO), United States v. Edmund Boyle, 08 Cr. 523 (CM), and Sand et al., Modern Federal Jury Instructions, Instr. 52-28 (2000); see United States v. Applins, 637 F.3d 59, 72 (2d Cir. 2011).

**REQUEST NO. 9**

**Count One: RICO Conspiracy**

**First Element — The Enterprise**

The first element the Government must prove beyond a reasonable doubt with respect to Count One is that the racketeering enterprise would be established as alleged in the Indictment.  This element is also satisfied if you find that the enterprise alleged in the Indictment was in fact established.

Such an enterprise under the statute does not have to have a particular name, or for that matter, have any name at all.  Nor must it be registered or licensed as an enterprise.  It does not have to be a commonly recognized legal entity, such as a corporation, a trade union, a partnership, or the like.

The statute makes clear that the enterprise may be, and I am quoting, "a group of individuals [who are] associated in fact although not a legal entity."

Thus, the enterprise may be a group of people informally associated together for a common purpose of engaging in a course of conduct.  This group may be organized for a legitimate and lawful purpose, or it may be organized for an unlawful purpose.  In addition to having a common purpose, this group of people must have a core of personnel who function as a continuing unit.  Furthermore, the enterprise must continue to exist in substantially similar form through the period charged.  This does not mean that the membership must remain exactly identical, but the enterprise must have a recognizable core that continues during a substantial time period within the time frame charged in the Indictment.

16

Here, the enterprise alleged in the Indictment was an association in fact. It did not have a name and did not have legal status. The Indictment alleges that the enterprise consisted of individuals associated in fact who engaged in various crimes, including securities fraud, a scheme to defraud automobile insurance companies that provide health care benefits to accident victims, a money laundering conspiracy, and operating illegal gambling businesses. The Indictment labels the enterprise the "Zemlyansky/Danilovich Organization."

In summary, if you find that there was a group of people characterized by (1) a common purpose or purposes, (2) an ongoing formal or informal organization or structure, and (3) core personnel who functioned as a continuing unit during a substantial time period within the time frame charged in the Indictment, then you may find that an enterprise existed.

> Adapted from the charges given in United States v. Zemlyansky, 12 Cr. 171 (JPO), United States v. Edmund Boyle, 08 Cr. 523 (CM), United States v. Perrone, 05 Cr. 774 (RPP), United States v. Espinal, 91 Cr. 310 (S.D.N.Y. 1991), aff'd, 981 F.2d 664 (2d Cir. 1992), and from Sand et al., Modern Federal Jury Instructions, Instr. 52-22. See United States v. Applins, 637 F.3d 59, 72 (2d Cir. 2011).

# REQUEST NO. 10

## Count One:  RICO Conspiracy

## Second Element — Effect on Interstate Commerce

The second element the Government must prove beyond a reasonable doubt with respect to Count One is that the enterprise would be engaged in or would have an effect upon interstate or foreign commerce.  Interstate commerce includes the movement of goods, services, money, and individuals between states.

The Government must prove that the enterprise would be engaged in interstate commerce or that its activities would affect interstate commerce.  All that is necessary is that the enterprise, or a proven racketeering act through which the affairs of the enterprise were conducted, would affect interstate or foreign commerce in some minimal way.  The effect need not be substantial; even a minimal effect is enough.  Nor is it necessary that the effect on interstate commerce have been adverse.  It is not necessary to prove that the acts of the defendant affected interstate commerce as long as the acts of the enterprise would have such an effect.  Finally, the Government is not required to prove that the defendant knew he or the enterprise was affecting interstate commerce.  All that is necessary is that you find beyond a reasonable doubt that the activities of the enterprise would affect interstate or foreign commerce in some minimal way.  [The parties have entered into a stipulation of fact that the conduct at issue during this trial affected interstate commerce.]

Adapted from the charges given in United States v. Zemlyansky, 12 Cr. 171 (JPO), United States v. Edmund Boyle, 08 Cr. 523 (CM), and United States v. Perrone, 05 Cr. 774 (RPP).

## REQUEST NO. 11

### Count One:  RICO Conspiracy

### Third Element — Association with the Enterprise

The third element the Government must prove beyond a reasonable doubt with respect to Count One is that the defendant would be associated with or employed by the enterprise.   It is not required that a defendant be associated with or employed by the enterprise for the entire time that the enterprise existed.  It is required, however, that the Government prove beyond a reasonable doubt that at <u>some</u> time during the period indicated in the Indictment, the defendant would be associated with or employed by the enterprise.

The Government must also show that the defendant's association with the enterprise was knowing — that is, made with knowledge of the existence of the enterprise through a general awareness of some of its purposes, activities, and personnel.  A person cannot be associated with or employed by an enterprise if he does not know of the enterprise's existence or the nature of its activities.  Thus, in order to prove this element, the Government must prove, beyond a reasonable doubt, that the defendant would be connected to the enterprise in some meaningful way, and that the defendant knew of the existence of the enterprise and of the general nature of its activities.

> Adapted from the charges given in <u>United States</u> v. <u>Zemlyansky</u>, 12 Cr. 171 (JPO), <u>United States</u> v. <u>Edmund Boyle</u>, 08 Cr. 523 (CM), <u>United States</u> v. <u>Perrone</u>, 05 Cr. 774 (RPP), and <u>United States</u> v. <u>Espinal</u>, 91 Cr. 310 (S.D.N.Y. 1991), <u>aff'd</u>, 981 F.2d 664 (2d Cir. 1992).  <u>See also</u> Sand <u>et al.</u>, <u>Modern Federal Jury Instructions</u>, Instr. 52-24.

## REQUEST NO. 12

## Count One:  RICO Conspiracy

## Fourth Element — Membership in the Conspiracy

The fourth element the Government must prove beyond a reasonable doubt with respect to Count One is that the defendant knowingly and willfully agreed to conduct or participate directly or indirectly in the conduct of the affairs of the charged enterprise through a pattern of racketeering activity.

A pattern of racketeering activity requires the commission of, or the intention to commit, at least two related acts of racketeering by the defendant himself or by a co-conspirator within ten years of each other, excluding any time spent by the defendant in prison.  Therefore, in this case, you only need to ask yourself whether, within any ten-year period, the defendant or his co-conspirators committed or agreed to commit at least two related racketeering acts.

The two acts forming the required "pattern of racketeering" may not be isolated or disconnected but must be related to each other by a common scheme, plan, or motive.  The two acts must also amount to, or pose a threat of, continued criminal activity.  In determining whether the acts constitute a "pattern," you may consider whether the acts were closely related in time, whether the acts shared common victims or common goals, whether the acts shared a similarity of participants, or whether they shared a similarity of methods.  If the same act was repeated more than once, you may also consider this as evidence that the acts were part of a "pattern."

The focus of this element is on a defendant's agreement to participate in the objective of the enterprise to engage in a pattern of racketeering activity, and not on the

20

defendant's agreement to commit the individual predicate acts themselves.  The government

must prove that the defendant participated in some manner in the overall objective of the

conspiracy, and that the conspiracy involved, or would have involved, the commission of two

racketeering acts.  The government is not required to prove either that the defendant agreed to

commit two racketeering acts or that he actually committed two such acts, although you may

conclude that he agreed to participate in the conduct of the enterprise from proof that he agreed

to commit or actually committed such acts.

Stated another way, for purposes of the charged RICO conspiracy, the

Government does not have to prove that the defendant himself committed any of the charged

offenses or acts.  The Government only has to prove that the defendant entered into the charged

RICO conspiracy, and participated in the conspiracy, knowing and intending that he or any of his

co-conspirators would commit or agree to commit two or more of the charged acts or offenses.

> Adapted from the charges given in United States v. Zemlyansky,
> 12 Cr. 171 (JPO), United States v. Boyle, 08 Cr. 523 (CM), and
> United States v. Gotti, 08 Cr. 1220 (PKC).  See also United States
> v. Yannotti, 541 F.2d 112, 122 n. 11 (2d Cir. 2008); Sand et al.,
> Modern Federal Jury Instructions, Inst. 52-32 (providing that jury
> be instructed as to predicate acts charged in RICO conspiracy:
> "Again, the government must prove that two of these acts were, or
> were intended to be, committed as part of the conspiracy, although
> it need not prove that defendant committed or agreed to commit
> any of these acts as long as the government proves that defendant
> participated in some manner in the overall objective of the
> conspiracy.")

## REQUEST NO. 13

### Count One:  RICO Conspiracy

### Fourth Element — The Pattern of Racketeering Activity

For purposes of Count One, the Indictment alleges that the following categories of acts and offenses were committed, or were intended to be committed, as part of the conspiracy:

(1)     mail fraud, in violation of Title 18, United States Code, Section 1341;

(2)     wire fraud, in violation of Title 18, United States Code, Section 1343;

(3)     money laundering, in violation of Title 18, United States Code, Sections 1956 and 1957;

(4)     offenses involving fraud in the sale of securities, in violation of Title 15, United States Code, Sections 78j(b) and 78ff;

(5)     operating an illegal gambling business, in violation of 18, United States Code, Section 1955; and

(6)     operating an illegal gambling business, in violation of New York State Penal Law, Section 225.10 and 20.00.

Again, the Government must prove that, within a ten-year period, two acts and offenses in violation of the above statutes were committed, or were intended to be committed, by the defendant himself or by a co-conspirator as part of the charged RICO conspiracy.  The Government need not prove that the defendant himself committed or agreed to commit any of

22

these acts or offenses, so long as the Government proves that the defendant participated in some

manner in the overall objective of the conspiracy.

> Adapted from the charge given in <u>United States</u> v. <u>Zemlyansky</u>, 12 Cr. 171 (JPO); <u>see</u> Sand <u>et</u> <u>al</u>., <u>Modern</u> <u>Federal</u> <u>Jury</u> <u>Instructions</u>, Instr. 52-32; <u>United States v. Yannotti</u>, 541 F.2d 112, 122 (2d Cir. 2008) (stating that "to establish this pattern, the government need not prove that the defendant himself agreed that he would commit two or more predicate acts...," and noting that, although the RICO statute "broadened conspiracy coverage by omitting the requirement of an overt act; it did not, at the same time, work the radical change of requiring the government to prove [that] each conspirator agreed that he would be the one to commit two predicate acts."); <u>id.</u> at 129 n.11 ("to prove a defendant's membership in the agreement, the government need not prove that the defendant committed or agreed to commit any of the charged predicate acts as long as the government proves that he participated in some manner in the overall objective of the conspiracy"); <u>Salinas</u> v. <u>United States</u>, 522 U.S. 52, 64 (1997) (stating common law-principle "that, so long as they share a common purpose, conspirators are liable for the acts of their co-conspirators").

# REQUEST NO. 14

## Count One:  Racketeering Conspiracy

## Fourth Element — Racketeering Activity

I will now instruct you on the definition of each "predicate offense" that Count One of the Indictment alleges constitutes a pattern of racketeering activity.  I remind you that a "pattern of racketeering activity" requires that the defendant agreed to commit, or intended that some other member of the racketeering conspiracy would commit, at least two related acts of racketeering within ten years.  In order to return a guilty verdict, you must be unanimous as to which two (or more) related acts of racketeering were committed to constitute the charged pattern of racketeering activity within ten years.

As I told you before, it is not necessary for the Government to prove that the defendant himself committed or agreed to commit two or more predicate offenses.  It is sufficient if either that defendant, or some co-conspirator of his, committed or agreed to commit two or more of the predicate offenses that constitute the pattern of racketeering.

For convenience, and to remind you that the defendant's direct, personal participation in the predicate offenses is unnecessary for him to be found guilty of participating in a RICO conspiracy, I will be using the word "perpetrator" in referring to the person directly committing or agreeing to commit the offense, who can either be the defendant himself or a co-conspirator.

Adapted from the charges given in United States v. Zemlyansky,
12 Cr. 171 (JPO), and United States v. Edmund Boyle, S1 08 Cr.
523 (CM).

24

## REQUEST NO. 15

### Count One:  Racketeering Conspiracy

### Predicate Offense #1:  Mail Fraud

The first way in which the activity of the enterprise is alleged to have been carried out is mail fraud, in violation of Title 18, United States Code, Section 1341.

The statute provides, in pertinent part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises . . . for the purpose of executing such scheme or artifice or attempting to do so, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service . . . or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail . . . according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing [shall be guilty of a federal crime].

The elements of this crime are:

First:  That there was either: (a) a scheme or artifice to defraud; or (b) a scheme or artifice to obtain money or property by false and fraudulent pretenses, representations or promises.

Second:  That the perpetrator knowingly and willfully participated in the scheme or artifice with knowledge of its fraudulent nature and with specific intent to defraud, or that the perpetrator knowingly and intentionally aided and abetted others in the scheme.

Third:  That in executing the scheme to defraud, the perpetrator used, or caused the use of, the mails.

**First Element**

As to the first element, a "scheme or artifice" is simply a plan for the accomplishment of an object. "Fraud" is a general term which embraces all ingenious efforts and means that individuals devise to take advantage of others. The advantage sought must involve money, property, or other thing of value. A "scheme to defraud" is merely a plan to obtain something of value by trick, deceit, deception or swindle.

Apart from proving a scheme or artifice to defraud, as I have just explained it to you, the mail fraud statute alternatively provides that it can be satisfied by the existence of a scheme or artifice to obtain money or property by means of false or fraudulent pretenses, representations or promises.

I have already discussed with you the definition of the term "scheme." Now, "fraudulent" is a general term. It includes all possible means by which a person seeks to gain some unfair advantage over another person by intentional misrepresentation, false suggestion, or concealment of truth. That unfair advantage must involve money, property, or any other thing of value.

A pretense, representation, statement, or document is fraudulent if it was made falsely and with intent to deceive. A representation, statement, claim, or document may also be fraudulent if it contains half-truths or if it conceals material facts in a manner that makes what is said or represented deliberately misleading or deceptive.

The deception need not be premised on spoken or written words alone. The arrangement of the words, or the circumstances in which they are used may convey the false and deceptive appearance.

This element does not require that any particular person actually relied upon, or actually suffered damages, as a consequence of any fraudulent representation or concealment of facts. Nor need you find that any of the conspirators, including the defendant, profited from the fraud. It is enough that a false statement, or a statement omitting material facts that made what was said deliberately misleading, was made as part of a fraudulent scheme in the expectation that it would be relied upon. You must concentrate on whether there was such a scheme, not on the consequences of the scheme. Of course, proof concerning the accomplishment of the goals of the scheme may be the most persuasive evidence of the existence of the scheme itself.

In addition, the false or fraudulent representation (or failure to disclose) must relate to a material fact or matter. A material fact is one that would reasonably be expected to be of concern to a reasonable and prudent person in relying upon the representation or statement (or failure to disclose) in making a decision.

A scheme to defraud need not be shown by direct evidence, but may be established by all the circumstances and facts in the case.

The Government alleges <u>two</u> kinds of schemes to defraud were involved in this predicate act. <u>First</u>, the Government alleges that the defendant or his alleged co-conspirators submitted or caused to be submitted fraudulent insurance claims for medical treatments that were either (i) never provided, (ii) more serious and expensive than the actual treatments that the patient received, and/or (iii) unnecessary or excessive because the patients did not medically need the treatments. Similarly, the Government alleges that the defendant or his alleged co-conspirators made false representations to insurance companies that certain Professional Corporations (which I will call P.C.s) were owned by licensed healthcare professionals, when in

27

fact they were owned by people who were not licensed healthcare professionals.  Second, the

Government alleges that the defendant or his alleged co-conspirators committed securities fraud,

the elements of which I will describe to you later on.  It is sufficient for you to find this predicate

act proven if the Government proves either of these kinds of schemes to defraud beyond a

reasonable doubt.

In this case, the Government alleges as part of the predicate act of mail fraud that

false representations were made to insurance companies that certain P.C.s were owned by

licensed healthcare professionals, when in truth and in fact they were owned by lay persons who

were not licensed healthcare professionals.  I instruct you as a matter of law that all P.C.s in New

York State offering medical services must be owned by a licensed healthcare professional.  In

addition, for a professional medical services corporation in New York State to be eligible for

reimbursement for medical services under the state's no-fault automobile accident insurance

program, the medical clinic must be owned by a licensed healthcare professional.

To find a misrepresentation about ownership, you must determine that even

though the P.C.s were incorporated in the State of New York by certain licensed healthcare

professionals, those P.C.s were not actually owned by those licensed healthcare professionals.

Three sets of factors may inform your findings on ownership.  These three sets of

factors provide guidance, but they are not exhaustive.   You may rely also on your common

sense and experience to determine whether there was a fraudulent representation about the true

ownership of the P.C.s.

First, you should consider formal legal designations of ownership such as who

owns the shares of a P.C., and who has the rights to buy, sell, contract for or dissolve the P.C.

These considerations are probative but not necessarily conclusive of true ownership.  The law cautions against an over-rigid preoccupation with questions of structure, and recognizes a doctrine of false ownership where someone owns an asset merely on paper, in order to disguise the true owner of the property.  Therefore, you may find that someone who possesses legal rights in a P.C. is not a true owner based on weighing this factor against two other types of factors.

The second set of factors you can consider to determine ownership is responsibility for the financial risk of a P.C.  You can consider who receives the greatest financial profit when the P.C. does well and who loses the most financial investment if the P.C. fails.

The third set of factors you can consider to determine ownership is the exercise of domination and control over the P.C.  Domination and control can be illustrated by the power to create, sell, destroy, and direct the assets of a P.C.

Based on a thorough consideration of these three types of factors, you must determine whether there was a material misrepresentation about the ownership of the P.C.s

Next, you must determine whether misrepresentations in billing were made.  To find a misrepresentation in billing you must determine that the defendant or his alleged co-conspirators submitted or caused to be submitted fraudulent insurance claims for medical treatments that were either (i) never provided, (ii) more serious and expensive than the actual treatments that the patient received, and/or (iii) unnecessary or excessive because the patients did not medically need the treatments.  Any of these three misrepresentations about billing is sufficient without finding that the other misrepresentations also existed.

29

Finally, you must determine whether securities fraud was committed. I will explain the law governing securities fraud in a moment.

### Second Element

As to the second element of mail fraud, a perpetrator acts with "specific intent to defraud" if he engages or participates in a scheme to defraud or to obtain money by false or fraudulent pretenses, representations or promises with some realization of the scheme's fraudulent or deceptive character, and with an intention to be involved in the scheme, and to help it succeed, with a purpose of causing harm to a victim — here, securities investors and insurance companies.

### Third Element

As to the third element of mail fraud, the use of the mails can be from one state to another, or just within a state or even a single city; it does not matter, as long as the United States mails were used. The mailed matter need not contain a fraudulent representation or request for money. It must, however, further or assist in the carrying out of the scheme to defraud. Furthermore, it is not necessary for the perpetrator to be directly or personally involved in the mailing, as long as the mailing was reasonably foreseeable in the execution of the alleged scheme to defraud in which the perpetrator is accused of participating.

> Adapted from the charge given in United States v. Zemlyansky, 12 Cr. 171 (JPO); see Sand et al., Modern Federal Jury Instructions, Instr. 44-3, 44-4, 44-5, 44-6. See also United States v. Gole, 158 F.3d 166, 167 (2d Cir. 1998) (the essential elements of mail fraud are "(1) the use of the mails to further (2) a scheme to defraud with (3) money or property as the object of the scheme"); United States v. DiNome, 86 F.3d 277, 283 (2d Cir. 1996) (elements of mail fraud); United States v. Amrep Corp., 560 F.2d 539, 543 (2d Cir. 1977) (defendant liable for fraudulent transaction in which he did not directly participate, so long as part of overall scheme) (citations omitted); United States v. Bryser, 954 F.2d 79, 88-89 (2d Cir.

1992); <u>Schmuck</u> v. <u>United States</u>, 489 U.S. 705, 710-11 (1989) ("To be part of the execution of the fraud . . . the use of the mails need not be an essential element of the scheme.  It is sufficient for the mailing to be incident to an essential part of the scheme, or a step in the plot.") (citations omitted).

**REQUEST NO. 16**

**Count One:  Racketeering Conspiracy**

**Predicate Offense #2:  Wire Fraud**

The second way in which the activity of the enterprise is alleged to have been carried out is wire fraud, in violation of Title 18, United States Code, Section 1343.

The statute provides, in pertinent part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be [guilty of a crime].

The elements of wire fraud are substantially the same as the elements of mail fraud:

First:  That there was either: (a) a scheme or artifice to defraud; or (b) to obtain money or property by materially false and fraudulent pretenses, representations or promises.

Second:  That the perpetrator knowingly and willfully participated in the scheme or artifice to defraud, with knowledge of its fraudulent nature and with specific intent to defraud, or that the perpetrator knowingly and intentionally aided and abetted others in the scheme.

Third:  That in execution of that scheme, the perpetrator used or caused the use of a private or commercial interstate carrier or interstate wires.

I have already instructed you on the first and second elements in the context of the mail fraud statute, and you should follow those instructions here.

The third element of wire fraud requires the use of a private or commercial interstate carrier or interstate wires in furtherance of the scheme to defraud.  The wire communication must pass between two or more states as, for example, a telephone call between New York and New Jersey; or it must pass between the United States and a foreign country, such as a telephone call between New York and London.  A wire communication also includes a wire transfer of funds between banks in different states or between a bank in the United States and a bank in a foreign country.

The use of the wires need not itself be a fraudulent representation.  It must, however, further or assist in the carrying out of the scheme to defraud.  It is not necessary for the perpetrator to be directly or personally involved in the wire communication, as long as the communication was reasonably foreseeable in the execution of the alleged scheme to defraud in which the perpetrator is accused of participating.  In this regard, it is sufficient to establish this element of the crime if the evidence justifies a finding that the perpetrator caused the wires to be used by others.  This does not mean that the perpetrator must specifically have authorized others to make the call or transfer the funds.  When one does an act with knowledge that the use of the wires will follow in the ordinary course of business or where such use of the wires can reasonably be foreseen, even though not actually intended, then he causes the wires to be used. The government contends that it was reasonably foreseeable that the wires would be used in the ordinary course of business (e.g., to transfer the funds between banks,) and therefore that the perpetrator caused the use of the wires.

With respect to the use of the wires, the government must establish beyond a reasonable doubt the particular use charged in the indictment.  However, the government does

not have to prove that the wires were used on the exact date charged in the indictment.  It is

sufficient if the evidence establishes beyond a reasonable doubt that the wires were used on a

date substantially similar to the dates charged in the indictment.

> Adapted from the charge given in United States v. Zemlyansky, 12 Cr.
> 171 (JPO); see Sand et al., Modern Federal Jury Instructions, Instr. 44-3,
> 44-4, 44-5, 44-7.

**REQUEST NO. 17**

**Count One:  Racketeering Conspiracy**

**Predicate Offense #3:  Money Laundering**

The third way in which the activity of the enterprise is alleged to have been carried out is money laundering, in violation of Title 18, United States Code, Sections 1956 and 1957.  There are three different money laundering provisions that are relevant here — Title 18 United States Code, Sections 1956(a)(1)(A)(i), 1956(a)(1)(B)(i), and 1957.  If you find that an act satisfies all the elements of <u>any</u> one of the money laundering statutes, then you may find that act proven.  However, you must be unanimous as to which statute was violated for that act to count as one of the two acts required to form a "pattern of racketeering."

**18 U.S.C. § 1956**

Let me turn first to Title 18, United States Code, Section 1956.  To put it in the simplest terms, this statute makes it a federal crime for anyone knowingly to engage in certain kinds of financial transactions involving the proceeds of certain "specified unlawful activity" with an unlawful purpose, which I will define for you in a moment.

The elements of the crime of money laundering under Title 18, United States Code, Section 1956, are:

<u>First</u>, that a perpetrator conducted (or attempted to conduct) a "financial transaction."  I will define the term "financial transaction" for you in a moment.

<u>Second</u>, that the perpetrator knew that the funds or property involved in the financial transaction represented the proceeds of some form of unlawful activity.  This means that the perpetrator knew that such funds or property involved in the transaction represented

proceeds from <u>some</u> form, though not necessarily <u>which</u> form, of activity that constitutes a

felony offense under state or federal law.

   <u>Third</u>, that the funds or property involved in the financial transaction did in fact

represent the proceeds of the types of unlawful activity specified by the money laundering

statute.  I instruct you that, as a matter of law, proceeds from (1) securities fraud, (2) health care

fraud, (3) mail fraud, (4) wire fraud, and (5) conspiracy to commit securities fraud, health care

fraud, mail fraud, and/or wire fraud all qualify as proceeds of "specified unlawful activity."

   <u>Fourth</u>, that the perpetrator engaged in the financial transaction: (1) with the intent

to promote the carrying on of such specified unlawful activity; <u>or</u> (2) knowing that the

transaction was designed in whole or in part either to conceal or disguise the nature, location,

source, ownership, or control of the proceeds of such specified unlawful activity.

   In other words, the Government can satisfy this fourth element of the crime by

proving either one of the following:  (1) the perpetrator engaged in the financial transaction with

the intent to promote specified unlawful activity (18 U.S.C. § 1956(a)(1)(A)(i)), <u>or</u> (2) the

perpetrator engaged in the financial transaction knowing that the transaction was designed to

conceal or disguise proceeds from specified unlawful activity (18 U.S.C. § 1956(a)(1)(B)(i)).  If

you find that the Government has proven only one of the two prongs above, you must be

unanimous as to which one it has proven.

   Now, some definitions:

   The term "financial transaction" means and includes: (1) a transaction which in

any way or degree affects interstate or foreign commerce involving one or more "monetary

instruments" — a term that encompasses coin or currency of any country, travelers or personal

checks, bank checks or money orders, or investment securities, or negotiable instruments; (2) a transaction involving the use of a financial institution which is engaged in, or the activities of which affect, interstate or foreign commerce in any way or degree, including an insured bank of the Federal Deposit Insurance Act.

The term "knowing that the funds or property involved in the financial transaction represented the proceeds of some form of unlawful activity" means that the perpetrator knew that such funds or property involved in the transaction represented proceeds from <u>some</u> form, though not necessarily <u>which</u> specific form, of activity that constitutes a felony offense under state or federal or foreign law.

The phrase "with the intent to promote the carrying on of specified unlawful activity" means that the perpetrator must have conducted the financial transaction for the purpose of facilitating or making easier or helping to bring about the "specified unlawful activity" as defined above.

### 18 U.S.C. § 1957

Under a second federal statute — Title 18, United States Code, Section 1957 — it is a federal crime "to knowingly engage or attempt to engage in a monetary transaction in criminally derived property of a value greater than $10,000."

The elements of this crime under Section 1957 are:

<u>First</u>, that the perpetrator knowingly engaged, or attempted to engage, in a "monetary transaction";

<u>Second</u>, that the perpetrator knew the transaction involved "criminally derived property";

37

Third, that the property had a value of greater than $10,000;

Fourth, that the property was, in fact, derived from specified unlawful activity — in this case the proceeds of securities fraud, health care fraud, mail fraud, wire fraud, or conspiracy to commit securities fraud, health care fraud, mail fraud, and/or wire fraud; and

Fifth, that the transaction took place in the United States.

The term "monetary transaction" means the deposit, withdrawal, transfer or exchange, in or affecting interstate commerce, of funds or a monetary instrument by, through, or to a financial institution.

The term "criminally derived property" means any property constituting, or derived from, proceeds obtained from a criminal offense. The Government must prove only that the perpetrator knew that the property involved in the monetary transaction constituted, or was derived from, proceeds obtained by some criminal offense. The Government does not have to prove that the perpetrator knew the precise nature of that criminal offense, or that the perpetrator knew that the property involved in the transaction represented the proceeds of the types of "specified unlawful activity" as defined by the statute.

Although the Government must prove that at least $10,000 of the property at issue was criminally-derived property, the Government does not have to prove that all of the property at issue was criminally-derived.

Adapted from the charges given in United States v. Zemlyansky,
12 Cr. 171 (JPO), United States v. Fazio, 11 Cr. 873 (KBF), United
States v. Datta, 11 Cr. 102 (LAK); United States v. Gotti, 08 Cr.
1220 (PKC), and from Sand et al., Modern Federal Jury
Instructions, Instr. 50A-25-26, 50A-6-7.

## REQUEST NO. 18

### Count One:  Racketeering Conspiracy

### Predicate Offense #4:  Securities Fraud

The fourth way in which the activity of the enterprise is alleged to have been carried out is through offenses involving fraud in the sale of securities, in violation of Title 15, United States Code, Section 78j(b).

Section 78j(b) provides in relevant part:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange . . .  [t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

The elements of this crime are:

First:  That in connection with the purchase or sale of a security the perpetrator did any one or more of the following: (1) employed a device, scheme or artifice to defraud, or (2) made an untrue statement of a material fact or omitted to state a material fact which made what was said, under the circumstances, misleading, or (3) engaged in an act, practice or course of business that operated, or would operate, as a fraud or deceit upon a purchaser or seller.

Second:  That the perpetrator acted willfully, knowingly and with the intent to defraud.

Third:  That the perpetrator knowingly used, or caused to be used, (a) any means or instruments of transportation or communication in interstate commerce, or (b) the use of the mails in furtherance of the fraudulent conduct.

## First Element

The first element that the government must prove beyond a reasonable doubt is that in connection with the purchase or sale of a security the perpetrator did any one or more of the following: (1) employed a device, scheme or artifice to defraud, or (2) made an untrue statement of material fact, or omitted to state a material fact which made what was said, under the circumstances, misleading, or (3) engaged in an act, practice or course of business that operated, or would operate, as a fraud or deceit upon a purchaser or seller.  It is not necessary for the government to establish all three types of unlawful conduct in connection with the sale or purchase of a security. Any one will be sufficient for a conviction, if you so find, but you must be unanimous as to which type of unlawful conduct you find to have been proven.

As I have previously instructed you, a "device, scheme or artifice to defraud" is merely a plan for the accomplishment of any objective.  "Fraud" is a general term which embraces all efforts and means that individuals devise to take advantage of others. The law prohibits all kinds of manipulative and deceptive acts.  The fraudulent or deceitful conduct alleged need not relate to the investment value of the securities involved in this case.

You need not find that the perpetrator actually participated in any securities transaction if the perpetrator was engaged in fraudulent conduct that was "in connection with" a purchase or sale. The "in connection with" aspect of this element is satisfied if you find that there was some nexus or relation between the allegedly fraudulent conduct and the sale or purchase of

securities.  Fraudulent conduct may be "in connection with" the purchase or sale of securities if

you find that the alleged fraudulent conduct "touched upon" a securities transaction.

It is no defense to an overall scheme to defraud that the perpetrator was not

involved in the scheme from its inception or played only a minor role with no contact with the

investors and purchasers of the securities in question.  Nor is it necessary for you to find that the

perpetrator was the actual seller or offeror of the securities.  It is sufficient if the perpetrator

participated in the scheme or fraudulent conduct that involved the purchase or sale of stock.  By

the same token, the government need not prove that the perpetrator personally made the

misrepresentation or that he omitted the material fact.  It is sufficient if the government

establishes that the perpetrator caused the statement to be made or the fact to be omitted.  With

regard to the alleged misrepresentations (and omissions), you must determine whether the

statement was true or false when it was made, (and, in the case of alleged omissions, whether the

omission was misleading).

If you find that the government has established beyond a reasonable doubt that a

statement was false or omitted, you must next determine whether the fact misstated was material

under the circumstances.  A material fact is one that would have been significant to a reasonable

investor's investment decision. This is not to say that the government must prove that the

misrepresentation would have deceived a person of ordinary intelligence.  Once you find that

there was a material misrepresentation or omission of a material fact, it does not matter whether

the intended victims were gullible buyers or sophisticated investors, because the securities laws

protect the gullible and unsophisticated as well as the experienced investor.

41

Nor does it matter whether the alleged unlawful conduct was successful or not, or that the perpetrator profited or received any benefits as a result of the alleged scheme.  Success is not an element of the crime charged.  However, if you find that the perpetrator did profit from the alleged scheme, you may consider that in relation to the element of intent.

### Second Element

The second element that the government must establish beyond a reasonable doubt is that the perpetrator participated in the scheme to defraud knowingly, willfully and with intent to defraud.  I have previously instructed you as to the meaning of these concepts when I instructed you on mail fraud, and you should follow those instructions.

### Third Element

The third and final element that the government must prove beyond a reasonable doubt is that the perpetrator knowingly used, or caused to be used, (a) any means or instruments of transportation or communication in interstate commerce, or (b) the use of the mails in furtherance of the fraudulent conduct.  A means or instrument of transportation or communication in interstate commerce includes an interstate telephone call, wire, or email.  I have previously instructed you as to the meaning of the use of the mails when I instructed you on mail fraud.

Adapted from the charge given in United States v. Zemlyansky, 12 Cr. 171 (JPO); see Sand et al., Modern Federal Jury Instructions, Instr. 57-20, 57-24, and 57-25.

## REQUEST NO. 19

### Count One:  Racketeering Conspiracy

### Predicate Offense #5:  Operating Illegal Gambling Business (Federal Law)

The fifth way in which the activity of the enterprise is alleged to have been carried out is operating illegal gambling businesses, in violation of federal law under Title 18, United States Code, Section 1955.  Section 1955 defines a gambling business as:  a gambling business which (i) is a violation of the law of a State or political subdivision in which it is conducted; (ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and (iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.

Thus there are three elements of this crime:

First, that the gambling business violated the laws of the State of New York;

Second, that the gambling business was (a) in substantially continuous operation for a period in excess of thirty days, or (b) had gross revenues of $2,000 or more in any one day; and

Third, that five or more persons, including the perpetrator, knowingly conducted, financed, managed, supervised, directed, or owned the gambling business.

### First Element

The first element the government must prove beyond a reasonable doubt is that the gambling business charged in the Indictment violated the laws of the state of New York that prohibit the operation of illegal poker games, pursuant to New York Penal Law § 225.05.

43

Under New York Penal Law § 225.05, "a person is guilty of promoting gambling in the second degree when he knowingly advances or profits from unlawful gambling activity."

The elements of this substantive crime are:

First, that the perpetrator advanced or profited from unlawful gambling activity;

Second, that the perpetrator knowingly advanced or profited from unlawful gambling activity.

Now some definitions. I have previously instructed you on the meaning of ther term "knowingly" and you should follow those instructions here. "Gambling" occurs when a person stakes or risks something of value upon the outcome of a contest of chance or a future contingent event not under his control or influence, upon an agreement or understanding that he will receive something of value in the event of a certain outcome. A "contest of chance" means any contest, game, gaming scheme or gaming device in which the outcome depends in a material degree upon an element of chance, notwithstanding that skill of the contestants may also be a factor therein. "Something of value" means any money or property, any token, object or article exchangeable for money or property, or any form of credit or promise directly or indirectly contemplating transfer of money or property or of any interest therein, or involving extension of a service, entertainment or a privilege of playing at a game or scheme without charge.

New York law covers two types of behavior. The first is advancing gambling activity. A person "advances" gambling activity when, acting other than as a player, he engages in conduct which materially aids any form of gambling activity. Such conduct includes but is not limited to conduct directed toward the creation or establishment of the particular game, contest, scheme, device or activity involved, toward the acquisition or maintenance of premises,

44

paraphernalia, equipment or apparatus therefor, toward the solicitation or inducement of persons to participate therein, toward the actual conduct of the playing phases thereof, toward the arrangement of any of its financial or recording phases, or toward any other phase of its operation.

The second type of behavior is profiting from gambling activity. A person "profits from" gambling activity when other than as a player (meaning someone who is involved only as a contestant or bettor), he accepts or receives money or other property pursuant to an agreement or understanding with any person whereby he participates or is to participate in the proceeds of gambling activity.

I instruct you that a poker game that charges a "rake," or percentage of the pot, qualifies as "unlawful gambling activity" under New York law.

The government is not required to prove that the perpetrator performed any act of gambling prohibited by New York law.  It is only required to prove that the business violated New York law.  The Government does not have to prove that the defendant knew that the gambling business was illegal.

**Second Element**

The second element the government must prove beyond a reasonable doubt is that either the gambling business was in substantially continuous operation for a period in excess of thirty days, or that gambling business had gross revenues of $2,000 or more in any one day.  The Government need only prove one of these.

To establish this element, the government is not required to prove that the business operated on an everyday basis throughout the entire period.  Instead, the government

must prove that over some period in excess of thirty days, the gambling business was conducted with sufficient regularity that it existed as an ongoing business rather than as a casual non-business activity.  The government is not required to prove that the perpetrator knew that the business was in substantially continuous operation.  It is for you to determine the specific period when the business was in substantially continuous operation. If that period was thirty days or less, then you should acquit the defendant. If it was longer than thirty days, then you should go on to the next element.

The second element can also be satisfied if the government proves beyond a reasonable doubt that the gambling business had gross revenues of $2,000 or more in any one day.  For the purposes of this element, gross revenues means the total amount wagered in one day regardless of how much was paid out to bettors as winnings. The government is not required to prove that the perpetrator knew that the business had gross revenues of $2,000 or more in any one day.

**Third Element**

The third element the government must prove beyond a reasonable doubt is that five or more persons, including the perpetrator, knowingly conducted, financed, managed, supervised, directed, or owned the gambling business during the period when you found it was in substantially continuous operation.  The terms "financed," "managed," "supervised," "directed," and "owned" should be given their everyday, ordinary meanings.  However, I would like to explain the term "conducted" in more detail.  To conduct a gambling business means to perform any act, function or duty which is necessary or helpful in the regular operation of the business. You may find that a person conducted the gambling business even though he was a low-level

46

employee having no part in the management or control of the business and no share in its profits. This includes any employee who was directly involved in gambling activity, like dealers and shufflers, or anyone who knowingly assisted in the operation of the gambling business, like waitresses and security guards.  However, someone whose only involvement with the business was as a customer or bettor is not conducting the business and cannot be counted as one of the five.

Five or more people, including the perpetrator, must have participated during the period you found that the gambling business was in substantially continuous operation. The government does not have to prove that all five persons were engaged at any particular time in conducting the business, as long as it proves that all five participated in the business during the period you identified.  It is not required that all five persons be charged in the Indictment.  Each of the five persons must have knowingly participated in the business. This means that they knew that they were involved in conducting a gambling business, and were not involved by accident, negligence or mistake.  The government does not have to prove that the perpetrator knew that the gambling business was illegal.

> Adapted from Sand et al., Modern Federal Jury Instructions, Instr. 39-22 through 39-26; the charges given in United States v. Zemlyansky, 12 Cr. 171 (JPO); United States v. Fusci, 09 Cr. 1239 (PKC); New York Penal Law §§ 225.00, 225.05, 225.10; *see also United States* v. *DiCristina*, 726 F.3d 91, 98 & n.5 (2d Cir. 2013) ("New York State courts have long held that poker contains a sufficient element of chance to constitute gambling under that state's laws.") (internal quotation marks omitted).

**REQUEST NO. 20**

**Count One:  Racketeering Conspiracy**

**Predicate Offense #6:  Operation of Illegal Gambling Business (New York State Law)**

The sixth way in which the activity of the enterprise is alleged to have been carried out is operating illegal gambling businesses by engaging in bookmaking, in violation of New York Penal Law § 225.10.

In relevant part, under New York Penal Law § 225.10, "A person is guilty of promoting gambling in the first degree when he knowingly advances or profits from unlawful gambling activity by . . . engaging in bookmaking to the extent that he receives or accepts in  any one day more  than  five  bets  totaling  more  than  five  thousand  dollars."

The elements of this substantive crime are:

First, that the perpetrator advanced or profited from unlawful gambling activity;

Second, that the perpetrator knowingly advanced or profited from unlawful gambling activity; and

Third, that the perpetrator engaged in bookmaking to the extent that he received or accepted in  any one day more  than  five  bets  totaling  more  than  five  thousand  dollars

I have already instructed you as to the meanings of the terms "gambling," "advances," and "profits from," and you should follow those instructions here.

"Bookmaking" means advancing gambling activity by unlawfully accepting bets from members of the public as a business, rather than in a casual or personal fashion, upon the outcomes of future contingent events, including sporting events.

48

The Government is not required to prove that the defendant performed any act of gambling prohibited by New York law.  It is only required to prove that the business in which the defendant or a co-conspirator was involved violated New York law.  The Government does not have to prove that the defendant knew that the gambling business was illegal.

Adapted from the charges given in United States v. Fusci, 09 Cr. 1239 (PKC); New York Penal Law §§ 225.00, 225.10.

49

**REQUEST NO. 21**

**Count Two:  Conspiracy to Commit Securities Fraud (Lyons Ward Scheme)**

Now we will return to Count Two, which charges that MICHAEL DANILOVICH conspired to commit securities fraud.   I have previously instructed you on the concept of a criminal conspiracy, and you should follow those instructions here.

I will now instruct you on the object of the conspiracy alleged in Count Two.  As I have previously instructed you, the object of a conspiracy is the illegal goal the co-conspirators agree or hope to achieve.  The Indictment here charges in Count Two that MICHAEL DANILOVICH and others agreed to commit securities fraud with respect to the Lyons Ward scheme from at least in or about 2007 up to and including in or about February 2009, in violation Title 18, United States Code, Section 371.  I have previously instructed you on the elements of securities fraud, and you should follow those instructions here.  I further instruct you that the investment product allegedly offered to investors by Lyons Ward is a "security" within the meaning of the law.

50

**REQUEST NO. 22**

**Count Three:  Securities Fraud (Lyons Ward Scheme)**

Count Three charges that MICHAEL DANILOVICH committed the substantive crime of securities fraud from at least in or about 2007 up to and including in or about February 2009, in violation Title 15, United States Code, Sections 78j(b) and 78ff.   Count Three, like Count Two, specifically charges the defendant with committing securities fraud with respect to the Lyons Ward scheme.  I have previously instructed you on the elements of securities fraud, and you should follow those instructions here.

## REQUEST NO. 23

### Count Four:  Conspiracy to Commit Mail Fraud and Wire Fraud (Lyons Ward Scheme)

Count Four charges that MICHAEL DANILOVICH conspired to commit mail fraud and wire fraud.  I have previously instructed you on the concept of a criminal conspiracy, and you should follow those instructions here.

Count Four alleges what is called a "multi-object conspiracy," that is, a conspiracy with more than one objective.  Here, each objective violates a different fraud statute.

The first object of the alleged conspiracy is that the defendant committed mail fraud with respect to the Lyons Ward scheme from at least in or about 2007 up to and including in or about February 2009, in violation Title 18, United States Code, Section 1341.

The second object of the alleged conspiracy is that the defendant committed wire fraud with respect to the Lyons Ward scheme from at least in or about 2007 up to and including in or about February 2009, in violation Title 18, United States Code, Section 1343.

I have previously given you instructions about the mail fraud and wire fraud statutes.  You should follow those instructions here.

It is not necessary for the Government to prove both objects of the conspiracy.  An agreement to accomplish any one object is sufficient.  But if you do not unanimously find beyond a reasonable doubt that all of the objects were proven, you must be unanimous as to which object you do find proven.  In other words, to return a verdict of guilty on Count Four, you must be in agreement with respect to at least one object of the conspiracy charged in this Count.

Adapted from the charges given in United States v. Zemlyansky, 12 Cr. 171 (JPO), United States v. Fazio, 11 Cr. 873 (KBF), and United States v. Datta, 11 Cr. 102 (LAK).

52

## REQUEST NO. 24

### Count Five:  Mail Fraud (Lyons Ward Scheme)

Count Five charges that MICHAEL DANILOVICH committed the substantive crime of mail fraud from at least in or about 2007 up to and including in or about February 2009, in violation Title 18, United States Code, Section 1341.   Count Five specifically charges the defendant with committing mail fraud with respect to the Lyons Ward scheme.  I have also previously instructed you on the elements of mail fraud, and you should follow those instructions here.

**REQUEST NO. 25**

**Count Six:  Wire Fraud (Lyons Ward Scheme)**

Count Six charges that MICHAEL DANILOVICH committed the substantive crime of wire fraud from at least in or about 2007 up to and including in or about February 2009, in violation Title 18, United States Code, Section 1343.   Count Six also specifically charges the defendant with committing mail fraud with respect to the Lyons Ward scheme. I have also previously instructed you on the elements of wire fraud, and you should follow those instructions here.

**REQUEST NO. 26**

**Count Seven:  Conspiracy to Commit Securities Fraud (Baron & Caplan Scheme)**

Count Seven charges that MICHAEL DANILOVICH conspired to commit securities fraud with respect to the Baron & Caplan scheme.   I have previously instructed you on the concept of a criminal conspiracy and the elements of securities fraud, and you should follow those instructions here.

**REQUEST NO. 27**

**Count Eight:  Conspiracy to Commit Mail Fraud and Wire Fraud
(Baron & Caplan Scheme)**

Count Eight charges that MICHAEL DANILOVICH conspired to commit mail fraud and wire fraud with respect to the Baron & Caplan scheme.  I have previously instructed you on the concepts of a criminal conspiracy and a "multi-object conspiracy," and the elements of mail fraud and wire fraud.  You should follow those instructions here.

56

**REQUEST NO. 28**

**Count Ten:  Health Care Fraud (No-Fault Scheme)**

**Elements**

We are going to take the counts slightly out of order at this point and address Count Ten, which charges a substantive count of health care fraud, before we discuss Count Nine, which charges a conspiracy to commit health care fraud, mail fraud, and wire fraud.

Count Ten charges MICHAEL DANILOVICH with committing the substantive crime of health care fraud, from approximately 2007 through 2012, in violation of Title 18, United States Code, Section 1347.

That statute provides, in pertinent part:

Whoever knowingly and willfully executes, or attempts to execute, a scheme or artifice -- (1) to defraud any health care benefit program; or (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program, in connection with the delivery of or payment for health care benefits, items, or services [shall be guilty of a crime].

The elements of the crime of health care fraud are:

First:  That there was either (a) a scheme or artifice to defraud or (b) a scheme or artifice to obtain money or property by false and fraudulent pretenses, representations or promises in connection with the delivery of or payment for health care benefits, items or services.

Second:  That the defendant knowingly and willfully executed or attempted to execute that scheme with the intent to defraud.

57

Third:  That the target of the scheme was a health care benefit program, as I will define that phrase for you.

I have already instructed you on the first and second elements in the context of the mail fraud statute, and you should follow those instructions.

With respect to the third element, the government must establish beyond a reasonable doubt that the target of the scheme was a health care benefit program.  The phrase "health care benefit program" means any public or private plan or contract under which any medical benefit, item, or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item, or service for which payment may be made under the plan or contract.  In order to qualify as a "health care benefit program," the program must affect interstate commerce.  As I explained earlier, this means that the program must have had some effect on the movement, transportation, or flow of goods, merchandise, money and individuals between or among the states.  I instruct you as a matter of law that automobile insurers like Liberty Mutual and Allstate are "health care benefit programs" within the meaning of Count Eight.

> Adapted from the charges in United States v. Zemlyansky, et al., S13 12 Cr. 171 (JPO), and  United States v. Chervin, 10 Cr. 918 (RPP); see Black's Law Dictionary (9th ed. 2009) (defining asset and intangible asset); 26 U.S.C. § 197 (defining intangible assets); Sand et al., Modern Federal Jury Instructions, Instr. 44-13, 44-14, 44-15, 44-16.  See also United States v. Lucien, 347 F.3d 45, 51-52 (2d Cir. 2003) ("[T]he defendants' participation in staged automobile accidents was encompassed and proscribed by § 1347.").

**REQUEST NO. 29**

**Count Nine:  Health Care Fraud, Mail Fraud, and Wire Fraud Conspiracy
(No-Fault Scheme)**

Now we will return to Count Nine, which charges MICHAEL DANILOVICH with participating in a conspiracy to defraud a health care benefit program, mail fraud, and wire fraud, in violation of Title 18, United States Code, Section 1349.  I have previously instructed you on the concepts of a criminal conspiracy and a "multi-object conspiracy," and the elements of health care fraud, mail fraud, and wire fraud.  You should follow those instructions here.

**REQUEST NO. 30**

**Count Eleven:  Mail Fraud (No-Fault Scheme)**

Count Eleven charges MICHAEL DANILOVICH with a substantive count of committing mail fraud from approximately 2007 until 2012 with respect to the no-fault insurance scheme, in violation of Title 18, United States Code, Section 1341.  Again, I instructed you previously on mail fraud, and you should follow those instructions here.

## REQUEST NO. 31

### Count Twelve:  Wire Fraud (No-Fault Scheme)

Count Eleven charges MICHAEL DANILOVICH with a substantive count of committing wire fraud from approximately 2007 until 2012 with respect to the no-fault insurance scheme, in violation of Title 18, United States Code, Section 1343.  Again, I instructed you previously on wire fraud, and you should follow those instructions here.

## REQUEST NO. 32

### Count Thirteen:  Money Laundering Conspiracy (No-Fault Scheme)

Count Thirteen charges MICHAEL DANILOVICH with participating in a conspiracy, from approximately 2007 through 2012, to launder criminal proceeds — specifically, proceeds from health care fraud, mail fraud, wire fraud, and conspiracy to commit health care fraud, mail fraud, and wire fraud, in connection with the no-fault insurance scheme.  I instruct you that as a matter of law, proceeds from the above categories of criminal activity all qualify as proceeds from "specified unlawful activity," as defined by the money laundering statutes.

Count Thirteen alleges what is called a "multi-object conspiracy," similar to Count Four, which I discussed earlier.   Here, each objective violates a different money laundering statute prohibiting somewhat different conduct.

The first object of the alleged conspiracy is that MICHAEL DANILOVICH or a co-conspirator conducted the financial transactions with the intent to promote the carrying on of a specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(A)(i).

The second object of the alleged conspiracy is that MICHAEL DANILOVICH or a co-conspirator conducted the financial transactions knowing that the transactions were designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the criminal proceeds, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

The third object of the alleged conspiracy is that MICHAEL DANILOVICH or a co-conspirator engaged in monetary transactions in criminally derived property of a value greater than $10,000 that was derived from specified unlawful activity, in violation of 18 U.S.C. § 1957.

I have previously given you more detailed instructions about each of these money laundering statutes.  You should follow those instructions here.  Unlike in Count One, however, where the defendant himself need not have entered into an agreement to commit money laundering, here you must find that MICHAEL DANILOVICH himself entered into such an agreement in order to find him guilty of conspiracy to commit money laundering.

Please note, however, that I instructed you previously that the Government must prove beyond a reasonable doubt that a perpetrator knew that the funds or property involved in the financial transaction represented the proceeds of some form of unlawful activity.  This means that the perpetrator knew that such funds or property involved in the transaction represented proceeds from <u>some</u> form, though not necessarily <u>which</u> specific form, of activity that constitutes a felony offense under state or federal law.

With respect to the conspiracy charged in Count Thirteen, it is not necessary for the Government to prove that all of the conspirators knew that the proceeds came from the <u>same</u> unlawful activity; it is sufficient that each potential conspirator knew that the proceeds came from <u>some</u> unlawful activity.

As I did before, let me also note that it is not necessary for the Government to prove all three of the objects of the conspiracy.  An agreement to accomplish any one object is sufficient.  But if you do not unanimously find beyond a reasonable doubt that all three of the objects were proven, you must be unanimous as to which object, if any, you do find proven.  In other words, to return a verdict of guilty on Count Thirteen as to the defendant, you must be in agreement with respect to at least one object of the conspiracy charged in this Count.

Adapted from the charges given in <u>United States</u> v. <u>Fazio</u>, 11 Cr.
873 (KBF), <u>United States</u> v. <u>Datta</u>, 11 Cr. 102 (LAK), and from
Sand <u>et al.</u>, <u>Modern Federal Jury Instructions</u>, Instrs., 50A-4.

63

**REQUEST NO. 33**

**Counts Fourteen, Fifteen and Sixteen:**
**Money Laundering Substantive Counts (No-Fault Scheme)**

Counts Fourteen, Fifteen, and Sixteen charge that MICHAEL DANILOVICH committed substantive money laundering offenses.  Count Fourteen charges that from approximately 2007 through 2012, the defendant violated Title 18, United States Code, Section 1956(a)(1)(A)(i).  Count Fifteen charges that from approximately 2007 through 2012, the defendant violated Title 18, United States Code, Section 1956(a)(1)(B)(i).  Count Sixteen allege that the defendant violated Title 18, United States Code, Section 1957 during the same time period.  I have already given you detailed instructions on these money laundering crimes, and you should follow those instructions here.

To briefly remind you, Count Fourteen alleges a violation of the statute that prohibits a person conducting financial transactions with the intent to promote the carrying on of a specified unlawful activity.

Count Fifteen alleges a violation of the statute that prohibits a person conducting financial transactions with the proceeds of a specified unlawful activity knowing that the transaction was designed in whole or in part either to conceal or disguise the nature, location, source, ownership, or control of the proceeds of such specified unlawful activity.

And Count Sixteen alleges a violation of the statute that prohibits a person conducting financial transactions with more than $10,000 of proceeds from a specified unlawful activity.

64

## REQUEST NO. 34

### Conscious Avoidance

This concludes my instructions on the crimes charged in the Indictment, but before I move onto my remaining instructions, I want to now instruct you on the concept of conscious avoidance.

I told you earlier that the defendant MICHAEL DANILOVICH, in various respects, must have acted knowingly in order to be convicted. This is true with respect to the objects of the conspiracies charged in Counts One, Two, Four, Seven, Eight, Nine, and Thirteen, as well as the substantive crimes charged in Counts Three, Five, Six, Ten, Eleven, Twelve, Fourteen, Fifteen, and Sixteen. In determining whether a particular defendant acted knowingly with respect to the substantive crimes or the objectives of the conspiracies, you may consider whether the defendant deliberately closed his eyes to what otherwise would have been obvious to him. That is what the phrase "conscious avoidance" refers to.

As I told you before, acts done knowingly must be a product of a person's conscious intention. They cannot be the result of carelessness, negligence, or foolishness. But a person may not intentionally remain ignorant of a fact that is material and important to his conduct in order to escape the consequences of criminal law. We refer to this notion of intentionally blinding yourself to what is staring you in the face as conscious avoidance.

An argument by the Government of conscious avoidance is not a substitute for proof; it is simply another factor that you, the jury, may consider in deciding what a defendant knew. Thus, if you find beyond a reasonable doubt that the defendant was aware that there was a high probability that a fact was so, but that the defendant deliberately avoided confirming this

fact, such as by purposely closing his eyes to it or intentionally failing to investigate it, then you may treat this deliberate avoidance of positive knowledge as the equivalent of knowledge.

For example, if you find beyond a reasonable doubt that a defendant was aware that there was a high probability that he caused claims to be submitted to an insurance company that included false representations or omitted material facts, but that the defendant deliberately and consciously avoided confirming this fact, then you may treat this deliberate avoidance as the equivalent of knowledge, unless you find that the defendant legitimately believed that the claims were accurate.

With respect to the conspiracies charged in Counts One, Two, Four, Seven, Eight, Nine, and Thirteen, you must also keep in mind that there is an important difference between intentionally participating in the conspiracy, on the one hand, and knowing the specific object or objects of the conspiracy, on the other. You may consider conscious avoidance in deciding whether the defendant knew the objective or objectives of a conspiracy; that is, whether the defendant reasonably believed that there was a high probability that a goal of the conspiracy was to commit the crime or crimes charged as objects of that conspiracy and deliberately avoided confirming that fact but participated in the conspiracy anyway. But conscious avoidance cannot be used as a substitute for finding that the defendant intentionally joined the conspiracy in the first place. It is logically impossible for a defendant to intend and agree to join a conspiracy if he does not actually know it exists, and that is the distinction I am drawing.

In sum, if you find that the defendant believed there was a high probability that a fact was so and that the defendant deliberately and consciously avoided learning the truth of that fact, you may find that the defendant acted knowingly with respect to that fact. However, if you

find that the defendant actually believed the fact was not so, then you may not find that he acted

knowingly with respect to that fact.  You must judge from all the circumstances and all the proof

whether the Government did or did not satisfy its burden of proof beyond a reasonable doubt.

> Adapted from the charge in United States v. Zemlyansky, 12 Cr.
> 171 (JPO), United States v. Datta, S1 11 Cr. 102 (LAK).  See also
> United States v. Kozeny, 667 F.3d 122, 132 (2d Cir. 2011) (the
> "jury may be instructed on conscious avoidance only where
> '(1) the defendant asserts the lack of some specific aspect of
> knowledge required for conviction, and (2) the appropriate factual
> predicate for the charge exists, *i.e.*, the evidence is such that a
> rational juror may reach the conclusion beyond a reasonable doubt
> that the defendant was aware of a high probability of the fact in
> dispute and consciously avoided confirming that fact.'") (quoting
> United States v. Ferrarini, 219 F.3d 145, 154 (2d Cir. 2000));
> United States v. Reyes, 302 F.3d 48, 54 (2d Cir. 2002) (in addition
> to actual knowledge, "a defendant can also be said to know a fact if
> he 'is aware of a high probability of its existence, unless he
> actually believes that it does not exist.'") (quoting Leary v. United
> States, 395 U.S. 6, 46 n.93 (1969)); United States v. Ferrarini, 219
> F.3d 145, 154 (2d Cir. 2000) ("A conscious avoidance instruction
> permits a jury to find that a defendant had culpable knowledge of a
> fact when the evidence shows that the defendant intentionally
> avoided confirming the fact.").  With regard to a conspiracy, this
> Court has held that the conscious avoidance doctrine "may be
> invoked to prove defendant had knowledge of the unlawful
> conspiracy," but the doctrine may not be "used to prove intent to
> participate in a conspiracy." Reyes, 302 F.3d at 54; accord United
> States v. Morgan, 385 F.3d 196, 206 (2d Cir. 2004).

# REQUEST NO. 35

## Aiding and Abetting

In connection with the charges contained in Count Three, which alleges substantive securities fraud, Counts Five and Eleven, which allege substantive mail fraud, Counts Six and Twelve, which allege substantive wire fraud, Count Ten, which alleges substantive health care fraud, and Counts Fourteen, Fifteen, and Sixteen, which allege substantive money laundering violations, the defendant is charged with committing certain criminal acts, and also with aiding and abetting the commission of those acts, in violation of Title 18, United States Code, Section 2.  As to each of those crimes, the defendant can be convicted either if he committed the crime himself or if he aided and abetted the commission of the crime by one or more people.  It is not necessary for the Government to show that the defendant himself physically committed a crime in order for you to find him guilty.  If you do not find beyond a reasonable doubt that the defendant physically committed a crime, you may, under certain circumstances, still find him guilty of the crime as an aider and abettor.

A person who aids and abets another to commit an offense is just as guilty of that offense as if he had committed it himself.  Therefore, if you find that the Government has proven beyond a reasonable doubt that another person actually committed a crime, and that the defendant aided and abetted that person in the commission of the offense, then you may find the defendant guilty of that crime.

As you can see, the first requirement is that another person has committed the crime charged.  Obviously, no one can be convicted of aiding and abetting the criminal acts of another if no crime was committed by the other person.  But if you do find that a crime was

68

committed, then you must consider whether the defendant aided or abetted the commission of the crime.

In order to aid and abet another to commit a crime, it is necessary that the defendant willfully and knowingly associated himself in some way with the crime, and that he willfully and knowingly sought by some act to help make the crime succeed.

To determine whether the defendant aided and abetted the commission of the crime with which he is charged, ask yourself these questions:

— Did he participate in the crime charged as something he wished to bring about?

— Did he associate himself with the criminal venture knowingly and willfully?

— Did he seek by his actions to make the criminal venture succeed?

If he did, then the defendant is an aider and abettor, and therefore guilty of the offense. If he did not, then the defendant is not an aider and abettor, and is not guilty of the offense.

Adapted from the charge in United States v. Zemlyansky, 12 Cr. 171 (JPO); Sand et al., Modern Federal Jury Instructions, Instrs. 10-1.

69

**REQUEST NO. 36**

**Venue**

In addition to all the elements I have described for you with respect to each separate count in the Indictment, you must also decide, separately for each count, whether any act in furtherance of the charged offense occurred within the Southern District of New York.

The Southern District of New York encompasses the following counties: New York (or Manhattan), the Bronx, Westchester, Sullivan, Orange, Rockland, Putnam, and Duchess. In this regard, the Government need not prove that any crime was committed in this District or that the defendant was present here. It is sufficient to satisfy this element if any act in furtherance of the crime you are considering occurred within this District. For example, if an accomplice, in carrying out a crime, crossed a bridge between, say, Brooklyn and Staten Island, thereby passing through the Southern District of New York, that would satisfy venue.

Further, if you find that the crime charged is committed in more than one district, venue is proper in any district in which the crime was begun, continued, or completed. Thus, venue will lie in this district, the Southern District of New York, if you find that any part of the crime took place here, whether or not the defendant himself was even in this district. I further instruct you that any action in the Southern District of New York, or any communication into or out of the Southern District of New York, can establish venue so long as the action furthers the conspiracy charged. I further instruct you that any action in the Southern District of New York, or any communication into or out of the Southern District of New York, can establish venue so long as the action furthers the conspiracy charged.

I also instruct you that, with respect to the RICO conspiracy charge (Count One), the Government need not prove that each separate underlying predicate offense occurred in the Southern District of New York. Rather, it is sufficient for this count for the Government to prove that any act in furtherance of the charged pattern of racketeering occurred in the Southern District of New York, or that the enterprise itself had substantial contacts with the Southern District of New York.

With respect to all Counts, I should note that on this issue of venue — and this alone — the Government need not prove venue beyond a reasonable doubt, but only by a mere preponderance of the evidence. Thus, the Government has satisfied its venue obligations if you conclude that it is more likely than not that an act in furtherance of the offense was committed in this District.

If you find that the Government has failed to prove the venue requirement as to any particular count, then you must acquit the defendant on that count.

> Adapted from the charges given in United States v. Rogers, 90 Cr. 377 (CSH), United States v. Giovanelli, 01 Cr. 749 (JSR) (venue includes waters around Manhattan and bridges over them); and from Sand et al., Modern Federal Jury Instructions, Instr. 3-11. See also 18 U.S.C. § 3237 (general venue provision for offenses beginning in one district and ending in another, including mail fraud); United States v. Gonzalez, 922 F.2d 1044, 1054-55 (2d Cir. 1991) (venue is governed by preponderance standard).

## REQUEST NO. 37

## Time of Offense

As to each Count in the Indictment, various date ranges are alleged.  It is sufficient if you find that the charged conduct that you are considering occurred around the dates set forth in the Indictment.

This is also a good opportunity to instruct you that it does not matter if a specific event or transaction is alleged to have occurred on or about a certain date, and the evidence indicates that in fact it occurred on another date.  The law only requires a substantial similarity between the dates alleged in the Indictment and the dates established by the testimony and other evidence.

Adapted from the charges given in United States v. Alvarado-Matriller, 94 Cr. 723 (JGK), and United States v. Martinez, 97 Cr. 313 (HB).

## REQUEST NO. 38

### Immunity of Government Witnesses

You have heard the testimony of witnesses who have testified under a grant of immunity from this Court. This means that the testimony of the witness may not be used against him or her in any criminal case, except in a prosecution for perjury, giving a false statement, or otherwise failing to comply with the immunity order of this court.

You are instructed that the Government is entitled to call, as a witness, a person who has been granted immunity by Order of this Court. You may convict a defendant on the basis of such a witness's testimony alone, if you find that the testimony proves the defendant guilty beyond a reasonable doubt.

However, the testimony of a witness who has been granted immunity by the Court should be examined by you with great care. You should scrutinize it closely to determine whether or not it is colored in such a way as to place guilt upon the defendant in order to further the witness's own interests. If you believe it to be true, and determine to accept the testimony, you may give it such weight, if any, as you believe it deserves.

Adapted from Sand et al., Modern Federal Jury Instructions, Instr. 7-8.

73

## REQUEST NO. 39

### Cooperating Witness Testimony

You have also heard from witnesses who have testified that they were involved in criminal conduct, and who subsequently pled guilty to their criminal conduct pursuant to what is called a "cooperation agreement" with the Government.

Experience will tell you that the Government frequently must rely on the testimony of cooperating witnesses, and other witnesses who have admitted to participating in crimes. The Government must take its witnesses as it finds them and frequently must use such testimony in a criminal prosecution because otherwise it would be difficult or impossible to detect and prosecute wrongdoers.

The testimony of such cooperating witnesses is properly considered by the jury. If cooperating witnesses could not be used, there would be many cases in which there was real guilt and conviction should be had, but in which convictions would be unobtainable.

For these very reasons, the law allows the use of cooperating witness testimony. Indeed, it is the law in federal courts that the testimony of a single cooperating witness may be enough in itself for conviction, if the jury believes that the testimony establishes guilt beyond a reasonable doubt.

Because of the possible interest a cooperating witness may have in testifying, the cooperating witness's testimony should be scrutinized with care and caution. The fact that a witness is a cooperating witness can be considered by you as bearing upon his credibility. It does not follow, however, that simply because a person has admitted to participating in one or more crimes, that he is incapable of giving truthful testimony.

74

Like the testimony of any other witness, cooperating witness testimony should be given the weight that it deserves in light of the facts and circumstances before you, taking into account the witness's demeanor, candor, the strength and accuracy of a witness's recollection, his background, and the extent to which his testimony is or is not corroborated by other evidence in the case.

You heard testimony about cooperation agreements entered into between the Government and various cooperating witnesses. I must caution you that it is no concern of yours why the Government made an agreement with a particular witness. Your sole concern is whether a witness has given truthful testimony here in this courtroom before you.

In evaluating the testimony of a cooperating witness, you should ask yourselves whether this cooperating witness would benefit more by lying, or by telling the truth. Was his testimony made up in any way because he believed or hoped that he would somehow receive favorable treatment by testifying falsely? Or did he believe that his interests would be best served by testifying truthfully? If you believe that the witness was motivated by hopes of personal gain, was the motivation one that would cause him to lie, or was it one that would cause him to tell the truth? Did this motivation color his testimony?

If you find that the testimony was false, you should reject it. If, however, after a cautious and careful examination of the cooperating witness's testimony and demeanor upon the witness stand, you are satisfied that the witness told the truth, you should accept it as credible and act upon it accordingly.

As with any witness, let me emphasize that the issue of credibility need not be decided in an all-or-nothing fashion. Even if you find that a witness testified falsely in one part,

you still may accept his testimony in other parts.  That is a determination entirely for you, the

jury.

> Adapted from the charge given in United States v. Carrero, 91 Cr.
> 365, and from Sand et al., Modern Federal Jury Instructions, Instr.
> 7-5.  See also United States v. Gleason, 616 F.2d 2, 15 (2d Cir.
> 1979) ("Where the court points out that testimony of certain types
> of witnesses may be suspect and should therefore be scrutinized
> and weighed with care, such as that of accomplices or
> coconspirators . . . it must also direct the jury's attention to the fact
> that it may well find these witnesses to be truthful, in whole or in
> part.") (citations omitted); United States v. Cheung Kin Ping, 555
> F.2d 1069, 1073 (2d Cir. 1977) (same); United States v. Swiderski,
> 539 F.2d 854, 860 (2d Cir. 1976) (can be reversible error not to
> give accomplice witness charge if requested by defense).

## REQUEST NO. 40

## Defendant's Right Not to Testify

## [If Applicable]

The defendant did not testify in this case.  Under our Constitution, a defendant has no obligation to testify or to present any evidence, because it is the Government's burden to prove the defendant guilty beyond a reasonable doubt.  That burden remains with the Government throughout the entire trial and never shifts to the defendant.  A defendant is never required to prove that he is innocent.

You may not attach any significance to the fact that the defendant did not testify.  No adverse inference against him may be drawn by you because he did not take the witness stand.  You may not consider this against the defendant in any way in your deliberations in the jury room.

Sand et al., Modern Federal Jury Instructions, Instr. 5-21.

**REQUEST NO. 41**

**Law Enforcement and Government Employee Witnesses**

You have heard the testimony of law enforcement agents and of employees of the Government. The fact that a witness may be employed by a federal, state, or city Government as a law enforcement agent or employee does not mean that his or her testimony is deserving of more or less consideration or greater or lesser weight than that of an ordinary witness.

It is your decision, after reviewing all the evidence, whether to accept the testimony of the law enforcement agent or Government employee witness and to give to that testimony the weight you find it deserves.

Adapted from the charge given in United States v. Martinez, 00 Cr. 304 (MBM).

## REQUEST NO. 42

### Use of Recordings

Audio recordings, video recordings, and photographs have been admitted into evidence.  Some of this evidence may have been obtained by law enforcement agents without the knowledge of the participants.  Whether you approve or disapprove of the recording of those conversations or the recording of those images may not enter your deliberations.  I instruct you that the recordings and photographs were made in a lawful manner and that no one's rights were violated, and that the Government's use of this evidence is entirely lawful.

Therefore, regardless of any personal opinions, you must give this evidence full consideration along with all the other evidence in this case in determining whether the Government has proved the defendant's guilt beyond a reasonable doubt.  What weight you give these recordings, if any, is completely within your discretion.

Adapted from charge given in <u>United States</u> v. <u>Joseph Brideson</u>, S6 00 Cr. 1118 (MBM).

## REQUEST NO. 43

### Transcripts

In connection with the recordings that you have heard, you were provided with transcripts of the conversations to assist you while listening to the recordings.

### English Language Transcripts

With respect to the recordings of English language conversations, I instructed you then, and I remind you now, that the transcripts are not evidence. The transcripts were provided only as an aid to you in listening to the recordings. It is for you to decide whether the transcripts correctly present the conversations recorded on the recordings that you heard.

If you wish to hear any of the recordings again, or see any of the transcripts, they will be made available to you during your deliberations.

### Foreign Language Transcripts

You heard testimony that certain of the recordings admitted as evidence were of conversations that took place in a foreign language. For that reason, it was necessary for the Government to obtain translations of those conversations into English. The transcripts of those conversations embody the testimony of the interpreter called by the Government to testify. These transcripts were admitted into evidence. To the extent that you accept or reject the testimony of that interpreter, you may accept or reject the transcripts themselves of the foreign language conversations.

### [In the alternative, if applicable:]

[The transcripts of those recordings were the subject of a stipulation which was read to you during trial. In the stipulation, the parties agreed that the transcripts contained

80

accurate English translations of the foreign language conversations.  You should therefore

consider the translations as you would any other evidence in the case, and give them the weight

you deem appropriate as the finder of the facts.]

> Adapted from charge given in United States v. Joseph Brideson, S6
> 00 Cr. 1118 (MBM); see United States v. Ulerio, 859 F.2d 1144,
> 1145 (2d Cir. 1988) (not abuse of discretion to admit foreign
> language transcripts in evidence); United States v. Vasquez, 605
> F.2d 1269, 1272 & n.4 (2d Cir. 1979) (proper to play Spanish
> language tapes and to provide translated transcripts to jury, with
> cautionary instruction that jury is ultimate factfinder).

# REQUEST NO. 44

## Use of Charts and Tables

Some of the exhibits in the case were charts. These charts were introduced as summaries. They are not direct evidence but instead are summaries of the evidence. They are a visual representation of information or data as set forth either in the testimony of a witness or in a stipulation or in some documents. They are intended to be of assistance to you in your deliberations.

In presenting the evidence which you have heard, it is often easier and more convenient to utilize summary charts than to place all of the relevant documents in front of you. It is up to you to decide whether those charts fairly and correctly present the information in the testimony and the documents. The charts are not to be considered by you as direct proof of anything. They are merely graphic demonstrations of what the underlying testimony and documents are.

To the extent that the charts conform to what you determine the underlying evidence to be, you may accept them. But one way or the other, realize that the charts are not in and of themselves direct evidence. They are merely visual aids and nothing more.

Adapted from the charge given in United States v. Frank Summa,
02 Cr. 101 (GEL).

82

## REQUEST NO. 45

### Persons Not On Trial

You may not draw any inference, favorable or unfavorable, toward the Government or the defendant from the fact that any person was not named as a defendant in this case or in any particular count of the Indictment, and you may not speculate as to the reasons why other people were not charged or are not on trial before you now.  Those matters are wholly outside your concern and have no bearing on your function as jurors in deciding the guilt or non-guilt of the defendant before you.

Adapted from the charge given in United States v. Barnes,  S 77 Cr. 190 (S.D.N.Y. 1977), aff'd, 604 F.2d 121, 147 (2d Cir. 1979).

83

## REQUEST NO. 46

### Preparation of Witnesses

You have heard evidence during the trial that witnesses have discussed the facts of the case and their testimony with the lawyers before the witnesses appeared in court.

Although you may consider that fact when you are evaluating a witness's credibility, I should tell you that there is nothing either unusual or improper about a witness meeting with lawyers before testifying so that the witness can be aware of the subjects he or she will be questioned about, focus on those subjects, and have the opportunity to review relevant exhibits before being questioned about them. Such consultation helps conserve your time and the Court's time. In fact, it would be unusual for a lawyer to call a witness without such consultations.

Again, the weight you give to the fact or the nature of the witness's preparation for his or her testimony and what inferences you draw from such preparation are matters completely within your discretion.

Adapted from the charges given in United States v. Abdul Latif
Abdul Salam, 98 Cr. 208 (MBM), and United States v. Brooks, 99
Cr. 1027 (JGK).

## REQUEST NO. 47

### Particular Investigative Techniques Not Required

You have heard reference, in the arguments and cross-examination of defense counsel in this case, to the fact that certain investigative techniques were not used by the Government.  There is no legal requirement, however, that the Government prove its case through any particular means.  While you are to carefully consider the evidence adduced by the Government, you are not to speculate as to why they used the techniques they did or why they did not use other techniques.  The Government is not on trial.  Law enforcement techniques are not your concern.  Your concern is to determine whether, on the evidence or lack of evidence, the defendant's guilt has been proven beyond a reasonable doubt.

Adapted from the charges given in United States v. Nosov, S3 00 Cr. 314 (RLC), United States v. Medina, 91 Cr. 894 (JFK), and United States v. Mucciante, 91 Cr. 403 (PNL).

85

## REQUEST NO. 48

### Uncalled Witnesses — Equally Available To Both Sides

### [If Applicable]

There are people whose names you heard during the course of the trial but did not appear to testify. One or more of the attorneys has referred to their absence from the trial. I instruct you that each party had an equal opportunity or lack of opportunity to call any of these witnesses. Therefore, you should not draw any inferences or reach any conclusions as to what they would have testified to had they been called. Their absence should not affect your judgment in any way.

You should remember my instruction, however, that the law does not impose on a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.

Sand et al., Modern Federal Jury Instructions, Instr. 6-7.

# REQUEST NO. 49

## Stipulations

In this case, you have heard evidence in the form of stipulations of testimony. A stipulation of testimony is an agreement among the parties that, if called as a witness, a person would have given certain testimony. You must accept as true the fact that the witness would have given that testimony. However, it is for you to determine the weight to be given that testimony.

You have also heard evidence in the form of stipulations that contain facts that were agreed to be true. You must accept the facts in those stipulations as true.

## REQUEST NO. 50

## Sympathy: Oath As Jurors

Under your oath as jurors you are not to be swayed by sympathy or prejudice.

You are to determine the guilt or innocence of the defendant solely on the basis of the evidence

and subject to the law as I have charged you.

Sand et al., Modern Federal Jury Instructions, Instr. 2-12. See also
United States v. Davis, aff'd, 353 F.2d 614 (2d Cir. 1965), cert.
denied, 384 U.S. 953 (1966).

## REQUEST NO. 51

### Punishment Not to be Considered by the Jury

Under your oath as jurors, you cannot allow a consideration of possible punishment that may be imposed upon a defendant, if convicted, to influence you in any way or in any sense to enter into your deliberations. The duty of imposing sentence is mine and mine alone. Your function is to weigh the evidence and to determine whether each defendant is or is not guilty upon the basis of evidence and the law.

Therefore, I instruct you not to consider punishment or possible punishment in any way in your deliberations in this case.

> Adapted from the charges of the Honorable Vincent L. Broderick in United States v. Drucker (S.D.N.Y.), Tr. 3151; the Honorable Edward Weinfeld in United States v. Bruswitz, aff'd, 219 F.2d 59, 62-63 (2d Cir.), cert. denied, 349 U.S. 913 (1955); and the Honorable Harold L. Tyler in United States v. Natelli, 74 Cr. 43 (S.D.N.Y. 1974), Tr. 2379-80, aff'd, 527 F.2d 311 (2d Cir.), cert. denied, 425 U.S. 934.

## REQUEST NO. 52

### Use of Evidence From Search

You have heard [testimony and/or a stipulation] about evidence seized in connection with certain searches conducted by law enforcement officers.  Evidence obtained from these searches was properly admitted in this case, and may be properly considered by you.  Such searches were entirely appropriate law enforcement actions.  Whether you approve or disapprove of how the evidence was obtained should not enter into your deliberations, because I instruct you that the Government's use of the evidence is entirely lawful.

You must, therefore, regardless of your personal opinions, give this evidence full consideration along with all the other evidence in the case in determining whether the Government has proven each defendant's guilt beyond a reasonable doubt.

Adapted from the charges of Judge Pierre N. Leval in United States v. Ogando, 90 Cr. 469 (PNL) (S.D.N.Y. 1991), and United States v. Mucciante, 91 Cr. 403 (PNL) (S.D.N.Y. 1992).

## REQUEST NO. 53

## Similar Act Evidence — Intent, Knowledge, Absence of Mistake, and Background

## [If Applicable]

The Government has offered evidence tending to show that on at least one or more occasions the defendant engaged in conduct similar to the charges in the Indictment. In that connection, let me remind you that the defendant is not on trial for committing acts not alleged in the Indictment. Accordingly, you may not consider this evidence of similar acts as a substitute for proof that the defendant as to whom the evidence was offered committed the crimes with which he is charged. Nor may you consider this evidence as proof that he has a criminal personality or bad character. The evidence of the other, similar acts was admitted for a much more limited purpose and you may consider it only for that limited purpose.

If you determine that the defendant committed the acts charged in the Indictment and the similar acts as well, then you may, but you need not, draw an inference that in doing the acts charged in the Indictment, that defendant acted knowingly and intentionally and not because of some mistake, accident or other innocent reasons. You may also consider this evidence in determining whether the defendant utilized a common scheme or plan in committing both the crimes charged in the Indictment and the similar acts introduced by the Government. You may also consider this evidence as background for the relationship between co-conspirators. Evidence of similar acts may not be considered by you for any other purpose. Specifically, you may not use this evidence to conclude that because the defendant committed the other act or acts he must also have committed the acts charged in the Indictment.

Adapted from Sand et al., Modern Federal Jury Instructions, Instr. 5-25.

91

## REQUEST NO. 54

### Prior Proceedings

You have heard references to prior proceedings during this trial.  As to the fact that there have been prior proceedings, do not speculate as to what they were about or why there were other proceedings. That is not relevant for your consideration.  There are dozens of reasons why before the trial of a case there may be prior proceedings, and you should not speculate as to why there are prior proceedings. You should not consider the fact that there was a prior proceeding in any way. Your verdict must be based solely upon the facts as you find them from the evidence introduced in this trial, in accordance with the law as I charge you, without any regard to what may have occurred earlier.

Adapted from the charge in United States v. Gabinskya, 12 Cr. 171 (JPO).

92

**REQUEST NO. 55**

**Conclusion**

Your function now is to weigh the evidence in this case and to determine the guilt or non-guilt of each of the defendant MICHAEL DANILOVICH with respect to each count in the Indictment in which a particular defendant is charged.

You must base your verdict solely on the evidence in this case and these instructions as to the law, and you are obliged under your oath as jurors to follow the law as I have instructed you, whether you agree or disagree with the particular law in question.

The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree to it. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another, and to deliberate with a view to reaching an agreement, if you can possibly do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial discussion and consideration of all the evidence in the case with your fellow jurors. In the course of your deliberations, do not hesitate to re-examine your own views, and change an opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence, solely because of the opinion of your fellow jurors.

Please remember, you are not partisans. You are judges — judges of the facts — not representatives of a constituency or cause. Your sole interest is to seek the truth from the evidence in this case.

93

If you are divided, do <u>not</u> report how the vote stands, and, if you have reached a verdict, do <u>not</u> report what it is until you are asked in open court.

Remember that your verdict must be rendered based solely on the evidence, without fear, without favor, and without prejudice or sympathy.

In conclusion, ladies and gentlemen, I am sure that if you listen to the views of your fellow jurors and if you apply your own common sense you will reach a fair verdict here.

Dated:      New York, New York
             August 21, 2015

Respectfully submitted,

PREET BHARARA
United States Attorney for the
Southern District of New York

By:          /s/
           Daniel S. Noble
           Joshua A. Naftalis
           Jaimie L. Nawaday
           Assistant United States Attorneys
           (212) 637-2239/2310/2275